Daniel J. Quigley
(State Bar No. 011052)
DANIEL J. QUIGLEY, P.L.C.
5425 E. Broadway Blvd., Ste. 352
Tucson, Arizona 85711
(520) 867-4430
quigley@djqplc.com

Conor T. Fitzpatrick*
(Mich. P78981 / D.C. 90015616)
FOUNDATION FOR INDIVIDUAL RIGHTS
AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@thefire.org
*Pro Hac Vice motion forthcoming

*Counsel for Plaintiffs*
Additional counsel listed in signature block

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Rebekah Massie; and Quintus Schulzke, *Plaintiffs*, v. City of Surprise, a municipal corporation and a governmental entity; Skip Hall, in his individual capacity; and Steven Shernicoff, in his individual capacity, *Defendants*. | No. _____ <br><br> **COMPLAINT FOR CIVIL-RIGHTS VIOLATIONS** <br><br> **JURY TRIAL DEMANDED** <br><br> Hon. _____ |

**INTRODUCTION**

1.     The Supreme Court has made clear that "one of the most precious of the liberties safeguarded by the Bill of Rights" is the sacred promise to every American, enshrined in the First Amendment, that citizens enjoy the freedom to complain about their leaders. *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018). But Defendants Surprise, Arizona and its mayor, Skip Hall, broke that promise, arresting Plaintiff Rebekah Massie in front of her 10-year-old daughter for criticizing a public official at a city council meeting.

2.     Video of the arrest[1] speaks for itself. On August 20, 2024, during the public comment portion of the Surprise City Council meeting, Massie spoke in opposition to a planned pay increase for Surprise's city attorney. But Mayor Hall interrupted her remarks, scolding her for violating a City Council policy prohibiting "complain[ing]" about public officials.

3.     Massie insisted—correctly—that the First Amendment protected her comments. Mayor Hall didn't care, responding, "Do you want to be escorted out of here or are you going to stop talking?" Massie stood firm on her constitutional rights and demanded the opportunity to finish her remarks.

4.     She never got the chance. Instead, Mayor Hall instructed a Surprise police officer, Defendant Steven Shernicoff, to detain Massie and eject her from the room.

---

[1] Video of the relevant portion of Surprise's August 20, 2024 City Council meeting is attached as Exhibit A; video of the entire meeting is on Surprise's public webpage, https://surpriseaz.portal.civicclerk.com/event/4076/media. Mayor Hall recognizes Massie to speak at 1:57:42.

1

Shernicoff carried out Hall's unconstitutional order, detaining and then arresting Massie in the City Council chamber. Her alleged crime? "Trespassing." But the only trespass on August 20th was against Massie's rights.

5. Surprise places a muzzle on its residents at City Council meetings, imposing a policy that bars remarks leveling "charges or complaints against any employee of the City or members of the body" (the "Council Criticism Policy").

6. Surprise's Council Criticism Policy violates the First Amendment. "Criticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). After all, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1983).

7. But when Massie exercised her constitutional right to criticize officials at a City Council meeting, a right "high in the hierarchy of First Amendment values," *Lozman*, 585 U.S. at 101, the Council Criticism Policy and Mayor Hall ensured she left the meeting in handcuffs. That might be how repressive regimes treat government critics, but it's an affront to our Constitution.

8. Surprise's sudden move to arrest dissidents and enforce the Council Criticism Policy is casting a cloud of fear over the city. Plaintiff Quintus Schulzke, a frequent speaker at City Council meetings, now fears criticizing Surprise officials, knowing he, like Massie, now risks arrest when he exercises his constitutional rights.

2

9.      Mayor Hall pledged to Massie that "any time you attack any staff member" or city official, she will be "escorted out," and promised, "that's what's gonna happen" now and "in the future." Plaintiffs bring this action to ensure it does not and to hold Defendants to account for their violations of the Constitution.

## THE PARTIES

*Plaintiffs*

10.     Plaintiff Rebekah Massie is a resident of Surprise, Arizona. Massie, who is active in local politics, frequently attends Surprise's City Council meetings to share her opinions on city affairs in an effort to improve her community.

11.     Massie suffered a violation of her constitutional rights when the mayor and police of her city prevented her from delivering constitutionally protected remarks about the city attorney, invoking a policy against vocalizing "complaints" about city officials.

12.     Plaintiff Quintus Schulzke is a resident of Surprise, Arizona. Schulzke is active in local politics and frequently attends Surprise's City Council meetings to share his opinions on city affairs in an effort to improve his community.

13.     Due to Surprise's unconstitutional policy against "complain[ing]" about public officials and the consequences to Massie for violating the policy, Schulzke is withholding voicing criticisms of officials at Surprise City Council meetings.

*Defendants*

14.     Defendant City of Surprise is an incorporated city in Maricopa County, Arizona. Surprise is governed by an elected City Council that holds regular meetings open

3

to the public. During the public comment period of City Council meetings, Surprise enforces the Council Criticism Policy.

15.     Defendant Skip Hall is the elected Mayor of the City of Surprise. The Mayor is the presiding officer of the City Council and its meetings. Mayor Hall, enforcing the Council Criticism Policy, ordered Massie to cease complaining about city officials, then directed police to detain her.

16.     Mayor Hall is Surprise's final policymaker for rules and decisions pertaining to the conduct of City Council meetings.

17.     At all times relevant to this Complaint, Mayor Hall acted under color of state law. Massie sues Hall in his individual capacity.

18.     Defendant Steven Shernicoff is an officer of the Police of the City of Surprise. Officer Shernicoff, enforcing the Council Criticism Policy, detained and arrested Massie.

19.     At all times relevant to this Complaint, Officer Shernicoff acted under color of state law. Massie sues Shernicoff in his individual capacity.

## JURISDICTION AND VENUE

20.      This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201–02.

21.     Massie and Schulzke seek injunctive relief against the City of Surprise enjoining enforcement of the Council Criticism Policy. Massie also seeks declaratory relief

that the Council Criticism Policy and Mayor Hall's directive that she cease criticizing city officials at City Council meetings violate the First Amendment. Additionally, Massie seeks monetary damages against the Defendants for violating her clearly established First and Fourth Amendment rights.

22.     Accordingly, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights jurisdiction).

23.     Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in this District and all Defendants reside in Arizona.

24.     Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Massie's and Schulzke's claims occurred within this District.

## **FACTUAL ALLEGATIONS**

***Surprise City Council meetings are open to public comments.***

25.     The City of Surprise holds regular meetings of its City Council.

26.     The mayor is the presiding officer of all City Council meetings. Surprise, Ariz., Municipal Code § 2-40(a).

27.     Under Arizona law, a "public body" like Surprise's City Council, "may make an open call to the public during a public meeting," during which any individual may "address the public body on any issue within the jurisdiction of the public body." Ariz. Rev. Stat. § 38-431.01(I).

28.     Arizona law permits members of the public to criticize members of a public body during a public comment period, providing that at "the conclusion of an open call to the public, individual members of the public body may respond to criticism made by those who have addressed the public body." *Id.*

29.     Arizona law allows public bodies to consider the public's remarks, but "members of the public body shall not discuss or take legal action on matters raised during an open call to the public unless the matters are properly noticed for discussion and legal action." *Id.*

30.     During City of Surprise City Council meetings, members of the public are invited to speak during the "Call to the Public" segment of the meeting.

31.     The City of Surprise's website invites any person "wishing to address the City Council" during the "Call-to-the-Public segment of the City Council Meeting" to submit a form to the City Clerk's office.

32.     The "Council Meeting Public Comment Form" is available online and at City Council meetings.

33.     A true and correct copy of the "Council Meeting Public Comment Form," as made available online, is attached as **Exhibit B**.

34.     According to the "Council Meeting Public Comment Form," the City of Surprise "values the comments and input from residents." *Id.*

35.     The "Council Meeting Public Comment Form" lists "rules" for remarks during the public comment period. *Id.*

36.     The rules derive from the City of Surprise Policies & Procedures Manual, a true and correct copy of which, as made available online, is attached as **Exhibit C**, and from page 20 of its "Rules for the Public at Council Meetings" (the "Rules for the Public").

37.     On August 6, 2024, following a review of the City of Surprise Policies & Procedures Manual by the Rules Committee, the City Council reaffirmed the Rules for the Public.

38.     The City of Surprise reaffirmed its use of the Council Criticism Policy even though, 28 years earlier, a federal court declared unconstitutional a narrower policy prohibiting "charges or complaints against any employee" during public comments at a school board's meetings. *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 730 (C.D. Cal. 1996).

39.     The rules provide that public speakers are permitted to speak for three minutes. Ex. B.

40.     The rules, as published on the online form, prohibit "actual disruption" of meetings. *Id.*

41.     The rules and the Rules for the Public both contain the Council Criticism Policy, barring speakers from "lodg[ing] charges or complaints against" Surprise officials and employees. *Id.*; Ex. C at 20.

42.     The Council Criticism Policy reads in full:

> Oral communications during the City Council meeting may not be used to lodge charges or complaints against any employee of the City or members of the body, regardless of whether such person is identified in the presentation by name or by any other

7

reference that tends to identify him/her. Any such charges or complaints should be submitted during normal business hours to the City Manager for appropriate action.

Ex. B; Ex. C at 20.

**Mayor Hall welcomes praise and neutral speech about Surprise officials and employees during City Council meetings.**

43. The Council Criticism Policy permits and welcomes praises and neutral speech during City Council meetings.

44. For example:

    a)    On December 20, 2022, a member of the public said she "came here to thank all of you for everything that you've done for our organization," and "specially thank […] Councilmember Roland Winters" for "all of those years, you have been so instrumental in supporting the arts," and handed the Councilmember a gift.

    b)    On April 18, 2023, a member of the public praised the Chief of Police of the City of Surprise, stating that "if there is ever any issues [sic], I trust in Chief Piña to do what is necessary for his department to continue to provide services in a professional manner," and praised "all the members of the Surprise Police Department" for "your hard work and devotion to service for our communities."

    c)    On October 17, 2023, a member of the public praised the Parks and Recreation Director of the City of Surprise, saying the Director gave a "great presentation" and he wanted to give "her and her staff a

standing ovation" because it was "the kind of investment that we need in our city," and "our city is doing awesome and we are growing."

d)   On May 21, 2024, a member of the public mentioned two members of the City Council by name, making a heart-shape hand symbol and remarking, "Nick, love you. Heart, Nick. Heart, Jack."

e)   On May 21, 2024, Plaintiff Schulzke told the Council: "I know you've all made a lot of personal sacrifice […], serving as you have here."

f)   On August 6, 2024, Plaintiff Schulzke said "I had a great discussion with Mr. Judd," referring to a member of the City Council.

***Massie voices respectful, but pointed criticism of Surprise's public officials, including during City Council meetings.***

45.   Rebekah Massie and Quintus Schulzke are frequent critics of the City of Surprise and its elected and appointed officials.

46.   Massie operates The Grand Failure, a nonprofit organization critical of the government of the City of Surprise.

47.   Through The Grand Failure, Massie operates a website, TheGrandFailure.org, publishing articles, petitions, and podcasts critical of the government of the City of Surprise.

48.   Through The Grand Failure and its website, Massie encourages visitors to contact Surprise officials, including Mayor Hall.

9

49.     On TheGrandFailure.org, Massie tells visitors: "We must continue to work together and ensure our voices are heard that enough is enough, our safety is being put at risk daily, and we are not going to allow this to be the 'status-quo' any longer."

50.     Massie also frequently criticizes the government of the City of Surprise in media appearances.

51.     Massie's public advocacy has been unwelcome to some members of the Surprise City Council.

52.     For example, on March 27, 2024, Councilmember Aly Cline—a candidate for mayor—ripped down flyers Massie had posted to promote her website and another candidate for mayor.

53.     On June 18, 2024, an outside law firm determined Councilmember Cline "violated state law and policies of the City on multiple occasions," including in tearing down Massie's flyers.

***Massie criticizes Surprise officials during City Council meetings on August 6, 2024.***

54.     The City Council held two meetings on August 6, 2024: a "work session" and a "regular" meeting.

55.     Video of the August 6 work session of the City Council is publicly available on Surprise's webpage: https://surpriseaz.portal.civicclerk.com/event/4040/media.

56.     During a public comment period of the August 6, 2024, work session of the City Council, Mayor Hall recognized Massie to speak. This occurs at 2:16:00 in the video.

10

57.     As Massie approached the podium, she noticed Mayor Hall rolled his eyes while saying "Miss Massie wants to speak to us again?"

58.     Massie told the mayor, "You can roll your eyes all you want, Mayor."

59.     During the public comment period of the August 6, 2024, regular City Council meeting, Massie criticized the appointment process for several city officials.

60.     Video of the August 6 regular meeting of the City Council is publicly available on Surprise's webpage:

https://surpriseaz.portal.civicclerk.com/event/4064/media.

61.     The appointment process utilized a nominating committee composed of two outgoing members of the City Council, including Councilmember Cline.

62.     During her remarks, Massie questioned the propriety of the makeup of the nominating committee for the appointments which involved outgoing councilmembers.

63.     Massie called it a "question of ethics" that Mayor Hall "nominate[d] the chair of the [nominating] committee and then the chair hand-selects the two members appointed." Massie also said Councilmember Cline "has proven herself incapable of being impartial."

64.     Massie's remarks can be seen at 38:43 in the regular City Council meeting video.

65.     As Massie approached the podium to speak during the second public comment period of the meeting, a microphone captured a City Council member remarking under their breath: "Oh, God." This occurs at 1:00:05 of the video of the regular meeting.

***Surprise police detain Massie at Mayor Hall's direction after she opposes a raise for the City Attorney.***

66.     The City Council next met on August 20, 2024.

67.     Mayor Hall presided over the August 20 meeting.

68.     As the presiding officer of the August 20 meeting, Mayor Hall was Surprise's final decisionmaker in implementing the Rules for the Public.

69.     The City Council's agenda for the August 20 meeting announced the body would consider an increase to the city attorney's salary.

70.     The proposed amendment to the "Employment Agreement with City Attorney" was premised on his "exceptional performance" having "faithfully and competently performed the duties of City Attorney."

71.     A true and correct copy of the "Second Amendment to the Employment Agreement with City Attorney" considered at the August 20, 2024, meeting is attached as **Exhibit D**.

72.     A true and correct copy of the video of Surprise's August 20 City Council meeting is submitted as **Exhibit A** to this Complaint.

73.     Massie attended the August 20, 2024, meeting with her 10-year-old daughter.

74.     When the "Call to the Public" segment began, Mayor Hall recognized Massie to speak. (Ex. A at 1:57:56.)

75.     Massie criticized the proposal to increase the city attorney's salary and voiced her belief that the city attorney's pay was too high compared to the salaries paid to other Surprise employees and to city attorneys in larger cities. (Ex. A at 1:59:00.)

76.     Massie questioned the proposal's assertion that the city attorney had done an "exceptional" job. (Ex. A at 1:58:34.)

77.     Massie supported her position by sharing her view that the city attorney had, in handling complaints about the conduct of a mayoral candidate, not complied with the Constitution, state law, or his duties of professional conduct. (Ex. A at 1:59:40.)

78.     Massie further supported her position by asserting the city attorney had been dilatory in responding to public records requests. (Ex. A at 2:00:24.)

79.     Massie's comments about the city attorney addressed issues within the jurisdiction of the City Council.

80.     Massie's comments did not purport to lodge a formal charge or formal complaint.

81.     Massie's comments did not disrupt the City Council meeting.

82.     Before Massie's three minutes had expired, and while she was explaining her opposition to the proposed city attorney pay increase, Mayor Hall said, "I've got to interrupt you here." (Ex. A at 2:00:30.)

83.     Mayor Hall held up the Council Meeting Public Comment Form. (Ex. A at 2:00:35; Ex. B.)

84.     Mayor Hall told Massie that by speaking at a public meeting, she "agree[d]" to the Council Criticism Policy. (Ex. A at 2:00:35.)

85.     Mayor Hall then read her the policy verbatim. (Ex. A at 2:00:39.)

86.     Massie objected that Mayor Hall was violating her "First Amendment rights." (Ex. A at 2:01:01.)

87.     Mayor Hall retorted, citing the Council Criticism Policy, "this is your warning […] for attacking the City Attorney personally." (Ex. A at 2:01:06.)

88.     Massie explained she was only sharing "factual information." (Ex. A at 2:01:14.)

89.     Mayor Hall responded that it "doesn't matter." (Ex. A at 2:01:15.)

90.     When Massie explained that she had a First Amendment right to speak, Mayor Hall responded she "agreed to" follow the Council Criticism Policy as a condition for sharing her opinion during the public comment period. (Ex. A at 2:01:19.)

91.     Massie responded that the Council Criticism Policy is "unconstitutional" and urged Mayor Hall to "look at case law." Massie stressed, "you are violating my First Amendment rights." (Ex. A at 2:01:23.)

92.     Mayor Hall then told Massie, "Do you want to be escorted out of here or are you going to stop talking?" (Ex. A at 2:01:41.)

93.     When Massie again asserted that Mayor Hall was "violating my First Amendment rights," Hall responded: "That's your opinion." (Ex. A at 2:01:47.)

94.     Although the city attorney was present, Mayor Hall did not ask the city attorney whether Massie was correct.

95.     Mayor Hall told Massie that she would be "escorted out" now and "in the future also, any time you attack any staff member" or city official. (Ex. A at 2:01:51.)

96.     Mayor Hall directed City of Surprise Chief of Police Benny Piña to "have somebody come down here and escort Miss Massie out of this chamber." (Ex. A at 2:02:14.)

97.     Massie pleaded with Mayor Hall not to detain her "in front of my 10-year-old daughter." (Ex. A at 2:02:21.)

98.     Mayor Hall responded, "She can go with you." (Ex. A at 2:02:24.)

***Officer Shernicoff carries out Mayor Hall's order to detain Massie.***

99.     At the direction of Mayor Hall, Officer Steven Shernicoff detained Massie. (Ex. A at 2:02:31.)

100.     Officer Shernicoff grabbed Massie's arms and placed them behind her back. (Ex. A at 2:02:36.)

101.     Shernicoff told Massie, "come out with me now before you get arrested." (Ex. A at 2:02:45.)

102.     Massie asked Shernicoff if he was detaining her. (Ex. A at 2:02:49.)

103.     Shernicoff responded "Yes." (Ex. A at 2:02:51.)

104.     Shernicoff forcibly removed Massie from the chamber. (Ex. A at 2:02:36.)

105.     Shernicoff forced Massie against a wall.

106.     Shernicoff placed Massie in handcuffs.

107.     Shernicoff told Massie she was under arrest.

108.     Shernicoff removed Massie to a detention facility.

109.    At the detention facility, an officer searched Massie, including placing her hands under Massie's clothing and under Massie's undergarments.

110.    In the process of detaining, arresting, and removing Massie, Shernicoff bruised and injured Massie's wrists, arms, and legs, causing her severe physical and emotional pain and distress.

111.    At the detention facility, an officer took Massie's fingerprints.

112.    Contrary to Mayor Hall's representation that Massie's 10-year-old daughter could "go with" her, Massie's daughter was left in the City Council chamber. (Ex. A at 2:03:03.)

113.    Officer Shernicoff refused to permit Massie to make a phone call or otherwise attempt to locate her daughter.

114.    Shernicoff cited Massie for criminal trespass in the third degree in violation of Arizona Revised Statutes, § 13-1502(A)(1).

115.    Because of the criminal charge, Massie was forced to retain a criminal defense attorney at her own expense.

***Schulzke frequently criticizes the City of Surprise and its officials at City Council meetings, but now fears expulsion or arrest.***

116.    Plaintiff Schulzke is the Chairperson of the Voice of Surprise, an Arizona political action committee.

117.    As explained on its Facebook page, Voice of Surprise is "a grassroots political action committee driven by the voices of our community members."

118.   Voice of Surprise's Facebook page explains that the organization is "[d]edicated to fostering transparency and accountability among our city's leaders."

119.   Hundreds of residents of the City of Surprise follow the organization's Facebook page.

120.   A true and correct copy of a screenshot of the Voice of Surprise's Facebook page is attached as **Exhibit E**.

121.   Schulzke frequently attends City Council meetings to speak on items on the Council's agenda.

122.   Schulzke watched the video of Massie's arrest and Mayor Hall's assertion that speakers "in the future" will be escorted out by police whenever they "attack any city employee" or official.

123.   Schulzke intends to attend and speak at future City Council meetings.

124.   As he has before, Schulzke wants to criticize the City of Surprise, its employees, and its officials, including Mayor Hall for his conduct on August 20, 2024.

125.   Schulzke fears that he will be silenced, ejected, or arrested if his criticism of the City of Surprise, its employees, or its officials is deemed to violate the Council Criticism Policy.

126.   As a result of Mayor Hall's enforcement of the Council Criticism Policy, he now intends to refrain from voicing his complete criticisms of the City of Surprise, its officials, and its employees when he speaks at City Council meetings, out of fear that he will be ejected, detained, or arrested.

## **INJURY TO PLAINTIFFS**

127.     Defendants injured Massie by silencing, detaining, and arresting her because she criticized government officials—an exercise of rights "high in the hierarchy of First Amendment values." *Lozman*, 585 U.S. at 101.

128.     The City of Surprise has violated—and continues to violate—Massie's and Schulzke's First Amendment rights by establishing, maintaining, and enforcing a policy allowing speakers to praise city officials, while forbidding them from complaining about the same officials.

129.     Mayor Hall injured Massie by ordering her to "stop talking" negatively of government officials, cutting off her "Call to the Public" remarks at the August 20 City Council meeting, and directing police to detain and eject her. Mayor Hall's viewpoint-discriminatory and content-discriminatory directive violated Massie's well-established First Amendment right to address a public body in a nondisruptive manner during a public comment period.

130.     Officer Shernicoff injured Massie by carrying out Mayor Hall's unconstitutional directive. Shernicoff's actions compounded the violation of Massie's First Amendment rights by violating her Fourth Amendment right to be free from unreasonable seizure.

131.     Officer Shernicoff physically injured Massie in the course of detaining her while carrying out Mayor Hall's unconstitutional directive. Shernicoff caused further injury to Massie's constitutional rights by physically removing her from a public forum,

pushing her against a wall, handcuffing her, arresting her, and removing her to a detention facility, where she was fingerprinted, searched, and held.

132.    Mayor Hall and Officer Shernicoff injured Massie by enforcing, through physical force, the Council Criticism Policy in front of Massie's minor daughter, in front of the audience assembled for the August 20 meeting, and in front of all those watching online and who later watched online.

133.    Mayor Hall promised to repeat his unconstitutional conduct, warning Massie, onlookers, and viewers of the video that he will have police remove those who violate the Council Criticism Policy during future City Council meetings.

134.    Mayor Hall's willingness to violate Massie's First Amendment rights at the hands of law enforcement has a chilling effect on Massie, Schulzke, and all those who wish to address the Surprise City Council.

135.    For Schulzke, the City of Surprise's maintenance and enforcement of the Council Criticism Policy inhibits his ability to share his views at City Council meetings, frustrating his ability to lead his organization's efforts to convey the views of Surprise residents to their City Council.

136.    The Council Criticism Policy's presence in the rules and the Rules for the Public, and Mayor Hall's recent history enforcing the policy, demonstrates a credible, specific, and ongoing threat of enforcement of the policy against Massie, Schulzke, and others who wish to criticize government officials at Surprise City Council meetings.

## CLAIMS

**FIRST CLAIM**
**Violation of First Amendment—**
**Freedom of Speech, Freedom of Petition**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant City of Surprise**
**for Injunctive and Declaratory Relief)**

137.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

138.    The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press, or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

139.    Criticizing government officials "is at the very center of the constitutionally protected area of free discussion." *Rosenblatt*, 383 U.S. at 85.

140.    The City of Surprise's Council Criticism Policy, which Mayor Hall enforces through his status as Chair of City Council meetings, violates the First Amendment both on its face and as applied to criticism of public officials.

141.    Surprise established a limited public forum when it created a "Call to the Public" segment of City Council meetings. *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990).

142.    In a public body's public comment period, content-based regulations are permissible only where they are "viewpoint neutral and enforced that way." *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010).

143.    "Viewpoint discrimination is impermissible no matter the forum." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1162 (9th Cir. 2022) (internal quotation omitted).

144.    "Viewpoint discrimination is an egregious form of content discrimination and is presumptively unconstitutional." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019) (internal quotation omitted).

145.    On its face, the Council Criticism Policy's prohibition of "complaints" about city officials and employees permits two points of view (laudatory or neutral speech about public officials) while forbidding a third (critical speech about the same officials).

146.    The Council Criticism Policy therefore codifies viewpoint discrimination and is unconstitutional under the First Amendment both on its face and as applied to public comments critical of government officials.

147.    The Council Criticism Policy is also unlawful content discrimination because it prohibits a category of speech (complaints about public officials) while allowing others.

148.    Under the First Amendment, content discrimination is permissible in the limited public forum of a public comment portion of a City Council meeting only if the restriction is viewpoint-neutral and reasonable in light of the purpose served by the forum. *Norse*, 629 F.3d at 975, 976 n.10.

21

149.   Prohibiting members of the public from criticizing government officials during a City Council meeting is not a reasonable restriction because the purpose of a public comment period is, among other things, to permit the public an opportunity to raise matters of public concern with their elected officials, and in so doing to address, praise, or criticize their elected officials. The public comment period allows the public to exercise their right to free speech and their right to petition their government officials for redress of grievances.

150.   Because the Council Criticism Policy discriminates based on viewpoint and content, it must satisfy strict scrutiny by being narrowly tailored to serve compelling state interests. *Waln*, 54 F.4th at 1163.

151.   Surprise has no compelling state interest in suppressing the public's ability to exercise their rights to free speech and to petition by peacefully voicing criticism about government officials.

152.   To the extent the Council Criticism Policy is intended to prevent "disruption" at City Council meetings, it is not narrowly tailored because a violation of the policy requires no evidence of actual, imminent, or threatened disorder.

153.   The reaction of the Mayor or City Council members to public criticism cannot serve as a "disruption" justifying restricting the speech of members of the public.

154.   To the extent that the Council Criticism Policy is intended to prevent the City Council from acting on a formal complaint without advance notice to the public, the policy is not narrowly tailored to achieve that goal.

155.    Any interest in preventing the City Council from acting on a formal complaint without advance notice to the public can be served without prohibiting the public from making critical comments during public meetings.

156.    For example, the City Council could prohibit its own members from acting on a formal complaint until the next regular meeting.

157.    But for the Council Criticism Policy and Surprise's enforcement of the policy, Plaintiffs would attend Surprise City Council meetings and criticize Surprise government officials during the "Call to the Public" comment period.

158.    The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

159.    Plaintiffs are entitled to an injunction against enforcement of the Council Criticism Policy.

160.    Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the Council Criticism Policy constitutes, on its face and as applied to nondisruptive criticism of government officials like Massie's, unlawful suppression of Plaintiffs' First Amendment right to be free from viewpoint and content discrimination.

161.    As a direct and proximate result of the Council Criticism Policy, Plaintiffs suffer and continue to suffer irreparable injury, including the denial of their constitutional rights to free speech and petition. Plaintiffs are entitled to prospective and permanent injunctive relief against the Council Criticism Policy.

162.    Without declaratory and injunctive relief from this Court, the City of Surprise's viewpoint and content discrimination against Plaintiffs' speech will continue and Plaintiffs will suffer *per se* irreparable harm indefinitely.

**SECOND CLAIM**
**Violation of First and Fourteenth Amendments—Vagueness**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant City of Surprise**
**for Injunctive and Declaratory Relief)**

163.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

164.    The Council Criticism Policy is vague in violation of the First and Fourteenth Amendments.

165.    The First and Fourteenth Amendments prohibit restrictions on speech which fail to provide members of the public fair notice of prohibited conduct. *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

166.    A government policy is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Gospel Missions of Am. v. City of Los Angeles*, 419 F.3d 1042, 1047 (9th Cir. 2005).

167.    A government policy is similarly unconstitutionally vague if it fails to provide officials charged with enforcing the policy sufficient precision and guidance regarding its scope "so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

168.   "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253–54.

169.   The Council Criticism Policy, which bars "complaints against any employee of the City or members of the body regardless of whether such person is identified in the presentation by name," fails to provide members of the public sufficient notice of what is restricted so that they may act accordingly. For example, the Council Criticism Policy leaves residents guessing whether voicing concern about a department's performance is equivalent to a "complaint" about the head of that department. And it provides no guidance as to whether objecting to an ordinance's passage counts as a "complaint" against those who voted for it. Nor does it make clear whether *any* criticism, or even a request that officials carry out their duties differently than they have, constitutes a "complaint."

170.   The Council Criticism Policy similarly fails to provide sufficient precision and guidance so that those enforcing the policy do not act in an arbitrary or discriminatory way.

171.   The Council Criticism Policy, which fails to provide members of the public sufficient information to conform their conduct to the requirements of the policy, chills Plaintiffs and other members of the public from engaging in protected First Amendment speech.

172.   The Council Criticism Policy codifies, invites, causes, and is used to facilitate viewpoint discrimination.

173.    Mayor Hall uses the Council Criticism Policy to suit his own whims—namely, to prohibit and restrict criticism of Surprise employees.

174.    The Council Criticism Policy is facially vague for the reasons stated above and is vague as applied to speakers like Massie because the policy did not give Massie fair notice that her conduct fell within the policy. Nor did it impose meaningful guidelines on Mayor Hall to prevent him from applying the policy in an arbitrary or discriminatory way, such as he did against Massie.

175.    The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.

176.    Plaintiffs are therefore entitled to an injunction preventing the City of Surprise from enforcing the Council Criticism Policy.

177.    Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the Council Criticism Policy is unlawfully vague and therefore violates the First and Fourteenth Amendments.

178.    Massie is entitled to a declaration under 28 U.S.C. § 2201 that Mayor Hall's interruption of her remarks on August 20, 2024, based on the Council Criticism Policy violated the First and Fourteenth Amendments, because the Council Criticism Policy violates the First and Fourteenth Amendments both facially and as applied to Massie.

179.    Without declaratory and injunctive relief against the Council Criticism Policy, the City of Surprise's suppression of Plaintiffs' freedoms of speech and petition will continue, and Plaintiffs will suffer *per se* irreparable harm indefinitely.

**THIRD CLAIM**
**Violation of First and Fourteenth Amendments—**
**Overbreadth**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant City of Surprise**
**for Injunctive and Declaratory Relief)**

180.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

181.   The Council Criticism Policy is facially overbroad in violation of the First Amendment.

182.   A speech regulation violates the First Amendment on its face when a substantial number of its applications violate the First Amendment compared to its legitimate applications. *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 615 (1973).

183.   A regulation of speech during the "Call to the Public" comment segment of a public meeting is unconstitutionally overbroad where "it unnecessarily sweeps a substantial amount of non-disruptive, protected speech within its prohibiting language." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 816 (9th Cir. 2013).

184.   The Council Criticism Policy sweeps up a substantial amount of nondisruptive, protected speech within its prohibition on "complaints against any employee of the City or members of the body."

185.   For example, the Council Criticism Policy has been applied or could be applied to reach:

27

a)    Massie's non-disruptive criticism of the proposal to increase the salary of the city attorney;

b)    A speaker disagreeing with a councilmember's vote; and

c)    A statement that members of the City Council do not adequately address storm drainage.

186.    Mayor Hall, whose authority as presiding officer requires him to interpret the rules applicable to public comments, has interpreted the Council Criticism Policy to reach any "attack [on] any staff member" or city official.  Ex. A at 2:01:51.

187.    To the extent that the Council Criticism Policy is intended to prevent the City Council from acting on a formal complaint without advance notice to the public, that interest can be served without prohibiting the public from making negative comments during public meetings.

188.    For example, the City Council could prohibit its own members from acting on a formal complaint until the next regular meeting.

189.    The Council Criticism Policy therefore prohibits a significant amount of protected core political speech: criticism of public employees during a public comment period, which far eclipses any theoretical lawful application against formal complaint submissions.

190.    The City of Surprise has no legitimate state interest in suppressing the public's ability to exercise their rights to free speech and to petition by peacefully voicing criticism about government officials.

191.    Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the Council Criticism Policy is unlawfully overbroad on its face and therefore violates the First Amendment.

192.    The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.

193.    Plaintiffs are also entitled to an injunction preventing the City of Surprise from enforcing the Council Criticism Policy.

194.    Without declaratory and injunctive relief against the enforcement of the Council Criticism Policy, Surprise's suppression and chill of Plaintiffs' freedom of speech will continue and Plaintiffs will suffer *per se* irreparable harm indefinitely.

**FOURTH CLAIM**
**Violation of First Amendment—Freedom of Speech, Freedom of Petition**
**42 U.S.C. § 1983**
**(Plaintiff Massie against Defendant Hall for Damages)**

195.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

196.    The Council Criticism Policy, and its enforcement against Massie's August 20, 2024, public comment remarks, violated the First Amendment for the reasons explained in Claims I–III.

197.    Massie's remarks about the city attorney's pay addressed a topic of public interest and concern.

198.    Mayor Hall engaged in impermissible viewpoint discrimination by using his status as Chair of the City Council to suppress Massie's criticism of a proposed pay

increase for Surprise's city attorney via the viewpoint-discriminatory Council Criticism Policy. Mayor Hall's actions deprived Massie of her First Amendment right to peacefully criticize public officials and to speak about matters of public concern.

199.    Mayor Hall engaged in impermissible content discrimination by using his status as Chair of the City Council to suppress Massie's criticism of a proposed pay increase for Surprise's city attorney via the content-discriminatory Council Criticism Policy. Mayor Hall's actions deprived Massie of her First Amendment right to peacefully criticize public officials and to speak about matters of public concern.

200.    It is clearly established that criticizing government officials "is at the very center of the constitutionally protected area of free discussion." *Rosenblatt*, 383 U.S. at 85.

201.    It is clearly established that government actors may not discriminate against speech based on the viewpoint expressed. *Rosenberger*, 515 U.S. at 828.

202.    It is further clearly established that prohibitions on criticizing government employees during public comment periods at City Council meetings are unconstitutional viewpoint discrimination. *Norse*, 629 F.3d at 975.

203.    It is clearly established that unreasonable restrictions on public comments at City Council meetings violate the First Amendment. *Norse*, 629 F.3d at 975.

204.    Using governmental authority to suppress public criticism of government officials but allowing praise of state officials is an obvious constitutional violation.

205.    At all times relevant, Mayor Hall was or should have been aware his actions were unconstitutional.

206.    As a direct and proximate cause of Mayor Hall's actions, Massie was deprived of her rights guaranteed by the First Amendment and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, and public embarrassment. Massie is entitled to actual and compensatory damages against Mayor Hall in an amount to be proven at trial.

207.    Mayor Hall's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's First Amendment rights because the Mayor acted with the intent to suppress Massie's criticism, not for any legitimate policy purpose. Accordingly, punitive damages also are appropriate and necessary to punish Mayor Hall for abridging Massie's constitutional rights, to deter Mayor Hall from violating the First Amendment in the future, and to deter other government officials from following Mayor Hall's censorial example.

208.    Mayor Hall's recklessness and callous disregard for Massie's First Amendment rights is exhibited by, among other things:

      a)    Mayor Hall's violation of clearly established First Amendment law;

      b)    Mayor Hall's dismissal of Massie's First Amendment rights as "your opinion;"

      c)    Mayor Hall's failure to seek guidance from the city attorney when Massie raised her First Amendment rights;

      d)    Mayor Hall's enforcement of a policy substantively identical to that declared unconstitutional in 1996; and

e)      Mayor Hall's expulsion of Massie, at the hands of law enforcement, for nondisruptive speech, in front of her 10-year-old daughter.

**FIFTH CLAIM**
**First Amendment Retaliation—**
**Freedom of Speech, Freedom of Petition**
**42 U.S.C. § 1983**
**(Plaintiff Massie against Defendant Hall for Damages)**

209.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

210.    It is clearly established that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

211.     Massie engaged in protected First Amendment expression for the reasons stated in Claims I and IV.

212.    Mayor Hall violated Massie's clearly established First Amendment rights by censoring her remarks and directing police to detain her at the August 20, 2024, City Council meeting based on Massie's prior critical comments about Mayor Hall and Mayor Hall's allies.

213.    In the alternative or in addition, Mayor Hall violated Massie's clearly established First Amendment rights by censoring her remarks and directing police to detain her at the August 20, 2024, City Council meeting based on Massie's critical comments regarding Surprise's city attorney.

214.   But for Massie's protected expression criticizing Mayor Hall, Mayor Hall's allies, and Surprise's city attorney, Mayor Hall would not have censored her August 20, 2024, remarks or directed police to detain her.

215.   Having remarks abruptly censored and being detained by police would deter a person of ordinary firmness from continuing to engage in protected First Amendment activity.

216.   Mayor Hall's actions not only prematurely curtailed Massie's exercise of her First Amendment rights, but also chilled her from engaging in protected First Amendment activity since she is now refraining from criticizing Surprise government officials at City Council meetings due to Mayor Hall's actions on August 20, 2024.

217.   As a direct and proximate cause of Mayor Hall's actions, Massie was deprived of her rights guaranteed by the First Amendment, and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, and public embarrassment. Massie is entitled to actual and compensatory damages against Mayor Hall in an amount to be proven at trial.

218.   Mayor Hall's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's rights because he acted with the intent to suppress her nondisruptive political speech criticizing him, his allies, and the Surprise city attorney. Accordingly, punitive damages are appropriate and necessary to punish Mayor Hall for abridging Massie's constitutional rights and to deter similar violations in the future.

### SIXTH CLAIM
### First Amendment—
### Freedom of Speech, Freedom of Petition
### 42 U.S.C. § 1983
### (Plaintiff Massie against Defendant Shernicoff for Damages)

219.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

220.    On August 20, 2024, Officer Shernicoff knew that the "Call to the Public" segment of Surprise City Council meetings was a forum intended for residents to express views to elected officials.

221.    Massie had a clearly established right to be free from detention and arrest for nondisruptive political remarks made within her allotted time during the "Call to the Public" segment of City Council meetings. *Lozman*, 585 U.S. at 101.

222.    On August 20, 2024, Officer Shernicoff knew or reasonably should have known that Massie's comments opposing a pay raise for Surprise's city attorney were constitutionally protected speech.

223.    By detaining and then arresting Massie for exercising her First Amendment rights, Officer Shernicoff deprived Massie of her First Amendment rights.

224.    As a direct and proximate cause of Officer Shernicoff's actions, Massie was deprived of her rights guaranteed by the First Amendment and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, public embarrassment, and legal and other costs. Massie is entitled to

actual and compensatory damages against Officer Shernicoff in an amount to be proven at trial.

225.    Officer Shernicoff's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's First Amendment rights because he acted with the intent to suppress her nondisruptive political speech. Accordingly, punitive damages are appropriate and necessary to punish Officer Shernicoff for abridging Massie's constitutional rights and to deter similar violations in the future.

**SEVENTH CLAIM**
**Violation of Fourth Amendment—**
**Unlawful Seizure and False Arrest**
**42 U.S.C. § 1983**
**(Plaintiff Massie against Defendants Hall and Shernicoff for Damages)**

226.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

227.    The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV.

228.    "Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

229.    Probable cause for a warrantless arrest exists only when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded

that there was a fair probability that the defendant had committed a crime." *Id.* (internal citation omitted) (cleaned up).

230. Probable cause may not be based on speech protected by the First Amendment. *Wayte v. United States*, 470 U.S. 598, 608 (1985).

231. Mayor Hall and Officer Shernicoff, acting at all times under color of state law, knowingly arrested and detained Massie, or knowingly acted to cause the same, against her will and without probable cause, in deprivation of Massie's rights under the Fourth and Fourteenth Amendments.

232. Lacking a valid basis to arrest Massie, Mayor Hall and Officer Shernicoff knowingly arrested and detained her and/or caused her arrest and detention without probable cause and against her will, based on her protected First Amendment political speech.

233. Mayor Hall and Officer Shernicoff willfully arrested and detained Massie, or willfully caused and directed her arrest and detention, with malice and/or a reckless and callous disregard for, and deliberate indifference to, her constitutional rights.

234. Mayor Hall knew or should have known that his conduct would cause Officer Shernicoff to inflict constitutional injury on Massie. *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

235. It is clearly established that an official or another acting under the color of state law cannot deprive a person of due process and seize and detain her person without probable cause. *Michigan v. Summers*, 452 U.S. 692, 700 (1981).

236.    It is also clearly established that an official or another acting under the color of state law cannot deprive a person of due process and seize her person in response to that person engaging in constitutionally protected activity, including nondisruptive political speech during the public comment period of a City Council meeting. *Lozman*, 585 U.S. at 101.

237.    It would have been clear to any reasonable official and law enforcement officer that no probable cause existed to arrest Massie.

238.    As a direct and proximate cause of Mayor Hall's and Officer Shernicoff's actions, Massie was deprived of her rights guaranteed by the Fourth Amendment and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, public embarrassment, and legal and other costs. Massie is entitled to actual and compensatory damages against Mayor Hall and Officer Shernicoff in an amount to be proven at trial.

239.    Mayor Hall's and Officer Shernicoff's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's rights because they acted with the intent to suppress her nondisruptive political speech. Accordingly, punitive damages are appropriate and necessary to punish Mayor Hall and Officer Shernicoff for abridging Massie's constitutional rights and to deter similar violations in the future.

**EIGHTH CLAIM**
**Violation of First Amendment—**
**Retaliatory Arrest**
**42 U.S.C. § 1983**
**(Plaintiff Massie against Defendant Hall for Damages)**

240.   Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

241.   Massie engaged in constitutionally protected speech when she criticized Mayor Hall, Mayor Hall's allies, and a proposed pay increase for Surprise's city attorney.

242.   Despite knowing there was no probable cause to detain or arrest Massie for her constitutionally protected speech, Mayor Hall intended and caused Officer Shernicoff to detain and arrest Massie in retaliation for exercising her First Amendment rights.

243.   But for Massie's protected speech regarding Mayor Hall, Mayor Hall's allies, and Surprise's city attorney, Mayor Hall would not have caused Officer Shernicoff to detain and arrest her.

244.   Other speakers at Surprise City Council meetings have praised and otherwise expressed views about government officials. Those speakers have not been detained or arrested.

245.   As a direct and proximate cause of Mayor Hall's actions, Massie was deprived of her rights guaranteed by the First Amendment and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, public embarrassment, and legal and other costs. Massie is entitled to actual and compensatory damages against Mayor Hall in an amount to be proven at trial.

246.     Mayor Hall's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's rights because he acted with the intent to suppress her nondisruptive political speech. Accordingly, punitive damages are appropriate and necessary to punish Mayor Hall for abridging Massie's constitutional rights and to deter similar violations in the future.

**NINTH CLAIM**
**Violation of First, Fourth, and Fourteenth Amendments—**
**Municipal Liability under *Monell***
**42 U.S.C § 1983**
**(Plaintiff Massie against Defendant City of Surprise)**

247.     Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

248.     At all times relevant to the allegations made herein, the City of Surprise developed, ratified, enforced, and continues to enforce the Council Criticism Policy.

249.     The Council Criticism Policy, reflected and codified in the Rules for the Public, constitutes an official city policy restricting speakers' First Amendment rights.

250.     The Council Criticism Policy was the moving force behind the deprivation of Massie's constitutional rights.

251.     Specifically, the Council Criticism Policy was the basis to: (1) censor Massie's remarks at the August 20, 2024, City Council meeting, (2) detain Massie at the August 20, 2024, City Council meeting, and (3) arrest Massie at the August 20, 2024 City Council meeting.

252.   Because the Council Criticism Policy is an official policy of the City of Surprise, the City of Surprise is responsible for Mayor Hall's and Officer Shernicoff's constitutional violations enforcing that policy under 42 U.S.C. § 1983.

253.   Under the City of Surprise Municipal Code, Mayor Hall was the presiding officer of the City Council at the August 20, 2024, meeting.

254.   As presiding officer, Mayor Hall is the final policymaker and has final policymaking authority over the conduct of a City Council meeting because the City Council's rules provide that a member of the public may not speak "until after being recognized by" the presiding officer. (Ex. B; Ex. C at 20.)

255.   As presiding officer, Mayor Hall had final policymaking authority for the City of Surprise to order Massie to stop speaking and to order police to remove Massie from the meeting.

256.   Mayor Hall's actions as presiding officer at the August 20, 2024, City Council meeting violated Massie's constitutional rights for the reasons stated in Claims I, II, III, IV, V, VII, and VIII.

257.   Because Mayor Hall's actions at the August 20, 2024, City Council meeting constituted the acts of a final policymaker of the City of Surprise, or are fairly attributable to the city as official city policy, the City of Surprise is responsible for the Mayor's constitutional violations under 42 U.S.C. § 1983.

258.   Because Officer Shernicoff acted under the orders of final policymaker Mayor Hall and pursuant to the Council Criticism Policy, the City of Surprise is responsible for Shernicoff's constitutional violations under 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

Plaintiffs respectfully request this Court enter judgment against Defendants and issue the following relief:

A.   Enter a preliminary and permanent injunction enjoining the City of Surprise from enforcing the Council Criticism Policy during meetings of the City Council of the City of Surprise;

B.   Declare Defendants' enforcement of the Council Criticism Policy against Massie on August 20, 2024, violated Massie's First Amendment rights;

C.   Declare the Council Criticism Policy violates the First and Fourteenth Amendments;

D.   Award Massie compensatory, nominal, and punitive damages;

E.   Award Plaintiffs their attorneys' fees under 42 U.S.C. § 1988;

F.   Award Plaintiffs their costs; and

G.   Award such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 3, 2024        Respectfully submitted,

/s/ Daniel J. Quigley
Daniel J. Quigley
(State Bar No. 011052)
DANIEL J. QUIGLEY, P.L.C.
5425 E. Broadway Blvd., Ste. 352
Tucson, Arizona 85711
(520) 867-4430
quigley@djqplc.com

Conor T. Fitzpatrick*
(Mich. P78981 / D.C. 90015616)
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@thefire.org

Adam B. Steinbaugh*
(Penn. 326476 / Cal. 304829)
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
adam@thefire.org

*Counsel for Plaintiffs*

* *Pro hac vice* application forthcoming.