Daniel J. Quigley
(State Bar No. 011052)
DANIEL J. QUIGLEY, P.L.C.
5425 E. Broadway Blvd., Ste. 352
Tucson, Arizona 85711
(520) 867-4430
quigley@djqplc.com

Conor T. Fitzpatrick*
(Mich. P78981 / D.C. 90015616)
FOUNDATION FOR INDIVIDUAL RIGHTS
AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@thefire.org

*Admitted *Pro Hac Vice*
*Counsel for Plaintiff*
Additional counsel listed in signature block

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Rebekah Massie<br><br>                              *Plaintiff,*<br>        v.<br><br>City of Surprise, a municipal corporation and a governmental entity;<br><br>Skip Hall, in his individual capacity; and<br><br>Steven Shernicoff, in his individual capacity,<br><br>                              *Defendants.* | No.  2:24-cv-02276-ROS-DMF<br><br>**FIRST AMENDED COMPLAINT FOR CIVIL-RIGHTS VIOLATIONS**<br><br>**JURY TRIAL DEMANDED**<br><br>Hon. Roslyn O. Silver |

**INTRODUCTION**

1.      The Supreme Court has made clear that "one of the most precious of the liberties safeguarded by the Bill of Rights" is the sacred promise to every American, enshrined in the First Amendment, that citizens enjoy the freedom to complain about their leaders. *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018). But Defendants Surprise, Arizona and its then-mayor, Skip Hall, broke that promise, arresting Plaintiff Rebekah Massie in front of her then-10-year-old daughter for criticizing a public official at a city council meeting.

2.      Video of the arrest[1] speaks for itself. On August 20, 2024, during the public comment portion of the Surprise City Council meeting, Massie spoke in opposition to a planned pay increase for Surprise's City Attorney. But Mayor Hall interrupted her remarks, scolding her for violating a City Council policy prohibiting "complain[ing]" about public officials.

3.      Massie insisted—correctly—that the First Amendment protected her comments. Mayor Hall didn't care, responding, "Do you want to be escorted out of here or are you going to stop talking?" Massie stood firm on her constitutional rights and asked to finish her remarks.

4.      She never got the chance. Instead, Mayor Hall instructed the Surprise Police Department to detain Massie and eject her from the room. Defendant Steven Shernicoff, a

---

[1]    Video of the entire meeting is on Surprise's public webpage, https://surpriseaz.portal.civicclerk.com/event/4076/media (the "August 20 Meeting Video"). Mayor Hall recognizes Massie to speak at 1:57:42.

Surprise police officer, carried out Hall's unconstitutional order, detaining and then arresting Massie in the City Council chamber. Her alleged crime? "Trespassing." But the only trespass on August 20th was against Massie's rights.

5.      Surprise placed a muzzle on its residents at City Council meetings, imposing a policy that barred remarks leveling "charges or complaints against any employee of the City or members of the body" (the "Council Criticism Policy").

6.      Surprise's Council Criticism Policy violated the First Amendment. "Criticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). After all, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1983).

7.      But when Massie exercised her constitutional right to criticize officials at a City Council meeting, a right "high in the hierarchy of First Amendment values," *Lozman*, 585 U.S. at 101, the Council Criticism Policy and Mayor Hall ensured she left the meeting in handcuffs. That might be how repressive regimes treat government critics, but it's an affront to our Constitution.

8.      Mayor Hall pledged to Massie that "any time you attack any staff member" or city official, she would be "escorted out" and promised "that's what's gonna happen" now and "in the future."

9.      After the video of Massie's arrest went viral, Surprise officials defended their actions. A city councilman, addressing the possibility of a lawsuit, retorted: "Bring it on."

2

The City's Chief of Police issued a department-wide message praising the arrest as exemplifying his department's "philosophy."

10.    An Arizona court dismissed the criminal charges against Massie with prejudice, calling the City's actions "objectively outrageous."

11.    The City of Surprise withdrew its policy, without comment, only after Massie filed this lawsuit and moved for a preliminary injunction.

12.    Massie brings this action to hold Defendants to account for their violations of the Constitution.

## THE PARTIES

*Plaintiff*

13.    Plaintiff Rebekah Massie is a resident of Surprise, Arizona. Massie, who is active in local politics, frequently attends Surprise's City Council meetings to share her opinions on city affairs in an effort to improve her community.

14.    The (now former) mayor and police of her city violated Massie's constitutional rights when they prevented her from delivering constitutionally protected remarks about the City Attorney, invoking a policy against vocalizing "complaints" about city officials.

*Defendants*

15.    Defendant City of Surprise is an incorporated city in Maricopa County, Arizona. Surprise is governed by an elected City Council that holds regular meetings open to the public. During the public comment period of City Council meetings, Surprise enforced the Council Criticism Policy.

16.     Defendant Skip Hall served as the elected Mayor of the City of Surprise until December 31, 2024. The Mayor is the presiding officer of the City Council and its meetings. Mayor Hall, enforcing the Council Criticism Policy, ordered Massie to cease complaining about city officials, then directed police to detain her.

17.     At all times relevant to this Complaint, Mayor Hall was Surprise's final policymaker for rules and decisions pertaining to the conduct of City Council meetings.

18.     At all times relevant to this Complaint, Mayor Hall acted under color of state law. Massie sues Hall in his individual capacity.

19.     Defendant Steven Shernicoff is an officer of the Police of the City of Surprise. Officer Shernicoff, enforcing the Council Criticism Policy, detained and arrested Massie.

20.     At all times relevant to this Complaint, Officer Shernicoff acted under color of state law. Massie sues Shernicoff in his individual capacity.

## **JURISDICTION AND VENUE**

21.      This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201–02.

22.     Massie seeks monetary damages against the Defendants for violating her clearly established First and Fourth Amendment rights. Massie also seeks monetary damages against Defendant Shernicoff for making harmful, offensive, and excessive contact with her when arresting her without legal authority to arrest her.

4

23. Accordingly, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights jurisdiction).

24. This Court has supplemental jurisdiction over the seventh (assault), eighth (battery), ninth (intentional or reckless infliction of emotional distress), and eleventh (Arizona Open Meeting Law) claims under 28 U.S.C. § 1367(a) because Massie's claims arise under Arizona law and form part of the same case or controversy as her federal claims.

25. Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in this District and all Defendants reside in Arizona.

26. Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Massie's claims occurred within this District.

### FACTUAL ALLEGATIONS

***Surprise City Council meetings are open to public comments.***

27. The City of Surprise holds regular meetings of its City Council.

28. The mayor is the presiding officer of all City Council meetings. Surprise, Ariz., Mun. Code § 2-40(a).

29. Under Arizona law, a "public body" like Surprise's City Council "may make an open call to the public during a public meeting," during which any individual may "address the public body on any issue within the jurisdiction of the public body." Ariz. Rev. Stat. § 38-431.01(I).

5

30.     Arizona law permits members of the public to criticize members of a public body during a public comment period, providing that at "the conclusion of an open call to the public, individual members of the public body may respond to criticism made by those who have addressed the public body." *Id.*

31.     Arizona law allows public bodies to consider the public's remarks, but "members of the public body shall not discuss or take legal action on matters raised during an open call to the public unless the matters are properly noticed for discussion and legal action." *Id.*

32.     During City of Surprise City Council meetings, members of the public are invited to speak during the "Call to the Public" segment of the meeting.

33.     The City of Surprise's website invites any person "wishing to address the City Council" during the "Call-to-the-Public segment of the City Council Meeting" to submit a form to the City Clerk's office.

34.     The "Council Meeting Public Comment Form" is available online and at City Council meetings.

35.     A true and correct copy of the online version of the "Council Meeting Public Comment Form" used on or about August 20, 2024, is attached as **Exhibit A**.

36.     According to the "Council Meeting Public Comment Form," the City of Surprise "values the comments and input from residents." *Id.*

37.     The "Council Meeting Public Comment Form" listed "rules" for remarks during the public comment period. *Id.*

38.     The rules derived from the City of Surprise Policies & Procedures Manual, a true and correct copy of which, as made available online on or about August 20, 2024, is attached as **Exhibit B**, and from page 20 of its "Rules for the Public at Council Meetings" (the "Rules for the Public").

39.     On August 6, 2024, following a review of the City of Surprise Policies & Procedures Manual by the Rules Committee, the City Council reaffirmed the Rules for the Public.

40.     The City of Surprise reaffirmed its use of the Council Criticism Policy even though, 28 years earlier, a federal court declared unconstitutional a narrower policy prohibiting "charges or complaints against any employee" during public comments at a school board's meetings. *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 730 (C.D. Cal. 1996).

41.     The rules provide that public speakers are permitted to speak for three minutes. Ex. A.

42.     The rules and the Rules for the Public both contained the Council Criticism Policy. The Council Criticism Policy barred speakers from "lodg[ing] charges or complaints against" Surprise officials and employees. *Id.*; Ex. B at 20.

43.     The Council Criticism Policy read in full:

> Oral communications during the City Council meeting may not be used to lodge charges or complaints against any employee of the City or members of the body, regardless of whether such person is identified in the presentation by name or by any other reference that tends to identify him/her. Any such charges or complaints should be submitted during normal business hours to the City Manager for appropriate action.

7

Ex. A; Ex. B at 20.

***Mayor Hall welcomes praise and neutral speech about Surprise officials and employees during City Council meetings.***

44.    The Council Criticism Policy permitted and welcomed praise and neutral speech during City Council meetings.

45.    For example:

a)    On December 20, 2022, a member of the public said she "came here to thank all of you for everything that you've done for our organization," and "specially thank […] Councilmember Roland Winters" for "all of those years, you have been so instrumental in supporting the arts," and handed the Councilmember a gift.

b)    On April 18, 2023, a member of the public praised the Chief of Police of the City of Surprise, stating that "if there is ever any issues [sic], I trust in Chief Piña to do what is necessary for his department to continue to provide services in a professional manner," and praised "all the members of the Surprise Police Department" for "your hard work and devotion to service for our communities."

c)    On October 17, 2023, a member of the public praised the Parks and Recreation Director of the City of Surprise, saying the Director gave a "great presentation" and he wanted to give "her and her staff a standing ovation" because it was "the kind of investment that we need in our city," and "our city is doing awesome and we are growing."

  d) On May 21, 2024, a member of the public mentioned two members of the City Council by name, making a heart-shape hand symbol and remarking, "Nick, love you. Heart, Nick. Heart, Jack."

  e) On May 21, 2024, a member of the public told the Council: "I know you've all made a lot of personal sacrifice […], serving as you have here."

  f) On August 6, 2024, a member of the public said "I had a great discussion with Mr. Judd," referring to a member of the City Council.

***Massie voices respectful, but pointed criticism of Surprise's public officials, including during City Council meetings.***

46. Rebekah Massie is a frequent critic of the City of Surprise and its elected and appointed officials.

47. Massie operates The Grand Failure, a nonprofit organization critical of the government of the City of Surprise.

48. Through The Grand Failure, Massie operates a website, TheGrandFailure.org, publishing articles, petitions, and podcasts critical of the government of the City of Surprise.

49. Through The Grand Failure and its website, Massie encourages visitors to contact Surprise officials, including, during his tenure, Mayor Hall.

50. On TheGrandFailure.org, Massie tells visitors: "We must continue to work together and ensure our voices are heard that enough is enough, our safety is being put at risk daily, and we are not going to allow this to be the 'status-quo' any longer."

51.    Massie also frequently criticizes the government of the City of Surprise in media appearances.

52.    Massie's public advocacy has been unwelcome to some members of the Surprise City Council.

53.    For example, on March 27, 2024, Councilmember Aly Cline—a candidate for mayor—ripped down flyers Massie had posted to promote her website and another candidate for mayor.

54.    On June 18, 2024, an outside law firm determined Councilmember Cline "violated state law and policies of the City on multiple occasions," including in tearing down Massie's flyers.

***Massie criticizes Surprise officials during City Council meetings on August 6, 2024.***

55.    The City Council held two meetings on August 6, 2024: a "work session" and a "regular" meeting.

56.    Video of the August 6 work session of the City Council is publicly available on Surprise's webpage: https://surpriseaz.portal.civicclerk.com/event/4040/media.

57.    During a public comment period of the August 6, 2024, work session of the City Council, Mayor Hall recognized Massie to speak. This occurs at 2:16:00 in the video.

58.    As Massie approached the podium, she noticed Mayor Hall rolled his eyes while saying "Miss Massie wants to speak to us again?"

59.    Massie told the mayor, "You can roll your eyes all you want, Mayor."

60.    During the public comment period of the August 6, 2024, regular City Council meeting, Massie criticized the appointment process for several city officials.

61.    Video of the August 6 regular meeting of the City Council is publicly available on Surprise's webpage: https://surpriseaz.portal.civicclerk.com/event/4064/media.

62.    The appointment process utilized a nominating committee composed of two outgoing members of the City Council, including Councilmember Cline.

63.    During her remarks, Massie questioned the propriety of the makeup of the nominating committee for the appointments which involved outgoing councilmembers.

64.    Massie called it a "question of ethics" that Mayor Hall "nominate[d] the chair of the [nominating] committee and then the chair hand-selects the two members appointed." Massie also said Councilmember Cline "has proven herself incapable of being impartial."

65.    Massie's remarks can be seen at 38:43 in the regular City Council meeting video.

66.    As Massie approached the podium to speak during the second public comment period of the meeting, a microphone captured Mayor Hall remarking under his breath: "Oh, God." This occurs at 1:00:05 of the video of the regular meeting.

***Surprise police detain Massie at Mayor Hall's direction after she opposes a raise for the City Attorney.***

67.    The City Council next met on August 20, 2024.

68.    Mayor Hall presided over the August 20 meeting.

11

69.     As the presiding officer of the August 20 meeting, Mayor Hall was Surprise's final decisionmaker in implementing the Rules for the Public.

70.     The City Council's agenda for the August 20 meeting announced the body would consider an increase to the City Attorney's salary.

71.     The proposed amendment to the "Employment Agreement with City Attorney" was premised on his "exceptional performance" having "faithfully and competently performed the duties of City Attorney."

72.     Massie attended the August 20, 2024, meeting with her then-10-year-old daughter.

73.     When the "Call to the Public" segment began, Mayor Hall recognized Massie to speak. (August 20 Meeting Video at 1:57:56.)

74.     Massie criticized the proposal to increase the City Attorney's salary and voiced her belief that the City Attorney's pay was too high compared to the salaries paid to other Surprise employees and to city attorneys in larger cities. (August 20 Meeting Video at 1:59:00.)

75.     Massie questioned the proposal's assertion that the City Attorney had done an "exceptional" job. (August 20 Meeting Video at 1:58:34.)

76.     Massie supported her position by sharing her view that the City Attorney had, in handling complaints about the conduct of a mayoral candidate, not complied with the Constitution, state law, or his duties of professional conduct. (August 20 Meeting Video at 1:59:40.)

77.     Massie further supported her position by asserting the City Attorney had been dilatory in responding to public records requests. (August 20 Meeting Video at 2:00:24.)

78.     Massie's comments about the City Attorney addressed issues within the jurisdiction of the City Council.

79.     Massie's comments did not purport to lodge a formal charge or formal complaint.

80.     Massie's comments did not disrupt the City Council meeting.

81.     Before Massie's three minutes had expired, and while she was explaining her opposition to the proposed City Attorney pay increase, Mayor Hall said, "I've got to interrupt you here." (August 20 Meeting Video at 2:00:30.)

82.     Mayor Hall held up the Council Meeting Public Comment Form. (August 20 Meeting Video at 2:00:35; Ex. A.)

83.     Mayor Hall told Massie that by speaking at a public meeting, she "agree[d]" to the Council Criticism Policy. (August 20 Meeting Video at 2:00:35.)

84.     Mayor Hall then read her the policy verbatim. (August 20 Meeting Video at 2:00:39.)

85.     Massie objected that Mayor Hall was violating her "First Amendment rights." (August 20 Meeting Video at 2:01:01.)

86.     Mayor Hall retorted, citing the Council Criticism Policy, "this is your warning […] for attacking the City Attorney personally." (August 20 Meeting Video at 2:01:06.)

87.    Massie explained she was only sharing "factual information." (August 20 Meeting Video at 2:01:14.)

88.    Mayor Hall responded that it "doesn't matter." (August 20 Meeting Video at 2:01:15.)

89.    When Massie explained that she had a First Amendment right to speak, Mayor Hall responded she "agreed to" follow the Council Criticism Policy as a condition for sharing her opinion during the public comment period. (August 20 Meeting Video at 2:01:19.)

90.    Massie responded that the Council Criticism Policy is "unconstitutional" and urged Mayor Hall to "look at case law." Massie stressed, "you are violating my First Amendment rights." (August 20 Meeting Video at 2:01:23.)

91.    Mayor Hall then told Massie, "Do you want to be escorted out of here or are you going to stop talking?" (August 20 Meeting Video at 2:01:41.)

92.    When Massie again asserted that Mayor Hall was "violating my First Amendment rights," Hall responded: "That's your opinion." (August 20 Meeting Video at 2:01:47.)

93.    Although the City Attorney was present, Mayor Hall did not ask the city attorney whether Massie was correct.

94.    Mayor Hall told Massie that she would be "escorted out" now and "in the future also, any time you attack any staff member" or city official. (August 20 Meeting Video at 2:01:51.)

95.    Mayor Hall directed City of Surprise Chief of Police Benny Piña to "have somebody come down here and escort Miss Massie out of this chamber." (August 20 Meeting Video at 2:02:14.)

96.    Massie pleaded with Mayor Hall not to detain her "in front of my 10-year-old daughter." (August 20 Meeting Video at 2:02:21.)

97.    Mayor Hall responded, "She can go with you." (August 20 Meeting Video at 2:02:24.)

***Officer Shernicoff carries out Mayor Hall's order to detain Massie.***

98.    At the direction of Mayor Hall, Officer Steven Shernicoff detained Massie. (August 20 Meeting Video at 2:02:31.)

99.    Shernicoff's body-worn video camera was recording as he carried out Mayor Hall's order to detain Massie. ("Shernicoff Body Camera Video.")

100.    Shernicoff grabbed Massie's arms and placed them behind her back. (August 20 Meeting Video at 2:02:36; Shernicoff Body Camera Video at 0:10.)

101.    Massie was in imminent apprehension of Shernicoff approaching her and grabbing her arms.

102.    Shernicoff told Massie: "Come out with me now before you get arrested."

103.    Massie asked Shernicoff if he was detaining her.

104.    Shernicoff responded "Yes."

105.    Shernicoff forcibly removed Massie from the chamber. (August 20 Meeting Video at 2:02:36; Shernicoff Body Camera Video at 0:30).

106.    Shernicoff forced Massie against a wall.

107.    Shernicoff forced Massie to the ground.

108.    Shernicoff placed Massie in handcuffs.

109.    Shernicoff told Massie she was under arrest for trespassing.

110.    With the assistance of unknown officers, Shernicoff removed Massie to a detention facility. (Shernicoff Body Camera Video at 9:10.)

111.    At the detention facility, an officer searched Massie, including placing her hands under Massie's clothing and under Massie's undergarments. (Shernicoff Body Camera Video at 12:04.)

112.    In the process of detaining, arresting, and removing Massie, Shernicoff bruised and injured Massie's wrists, arms, legs, back, and neck, causing her severe physical and emotional pain and distress.

113.    At the detention facility, an officer took Massie's fingerprints.

114.    Contrary to Mayor Hall's representation that Massie's 10-year-old daughter could "go with" her, Massie's daughter was left in the City Council chamber. (August 20 Meeting Video at 2:03:03.)

115.    Officer Shernicoff refused to permit Massie to make a phone call or otherwise attempt to locate her daughter. (Shernicoff Body Camera Video at 4:35.)

116.    Shernicoff cited Massie for criminal trespass in the third degree in violation of Arizona Revised Statutes, § 13-1502(A)(1).

***Arizona court dismisses the "objectively outrageous" charge with prejudice.***

117.    The criminal charge forced Massie to retain a criminal defense attorney at her own expense.

16

118.    On October 23, 2024, the Maricopa County Justice Court issued a written opinion granting Massie's motion to dismiss the trespassing charge with prejudice.

119.    The Maricopa County Justice Court did not, as requested by the State of Arizona, dismiss the trespassing charge without prejudice.

120.    The Maricopa County Justice Court found that Massie's arrest was without probable cause.

121.    In its written opinion, the Maricopa County Justice Court held the Council Criticism Policy "regulated not just speech; but *political* speech. It regulated not just the time, place, and manner of speech. It regulated the *content* of speech" (emphasis in original.)

122.    The Maricopa County Justice Court explained:

> [Massie] should not have faced criminal prosecution once for expressing her political views. The Court agrees that she should never face criminal prosecution, for expressing her political views on that date at that time, again. Nor should she be forced to encounter additional attorney fees should this matter be re-filed….

123.    The Maricopa County Justice Court found that "the government … attempt[ed] to control the content of political speech" and that Defendants did so "in a manner that was objectively outrageous."

***City of Surprise officials defend their policy and praise Massie's arrest.***

124.    Video of Massie's arrest attracted international media attention.

125.    In response to a media inquiry, City of Surprise Councilmember Ken Remley said Massie was "angling for" an arrest by "pointing out individuals by name."

17

126. When asked about the possibility of a First Amendment lawsuit, Councilmember Remley responded: "Bring it on."

127. A week after Massie's arrest, Chief of Police Piña appeared in a video statement shared with the City of Surprise Police Department's officers and staff.

128. In his video, Chief Piña remarked that "everybody in the world" was criticizing the department, but said the department's conduct was "in alignment with what our policy is and what our philosophy is, which is to take the next steps to make certain that we are in a position of power to show that we, and specifically Officer Shernicoff, acted with absolute speed to carry out the mission as directed that evening."

129. Chief Piña stated that Officer Shernicoff "has our support as an executive team, my support as police chief, and that goes all the way up to our city management."

130. Massie filed her first complaint for civil rights violations against the City of Surprise, Mayor Hall, and Officer Shernicoff on September 3, 2024. The following day, Massie filed a motion for preliminary injunction seeking to block enforcement of the Council Criticism Policy.

131. After Massie's arrest and subsequent lawsuit, the City of Surprise faced mounting local and national media pressure for its enforcement of the Council Criticism Policy.

132. On September 17, 2024, the City Council voted to repeal the Council Criticism Policy without discussion.

133. On or about November 13, 2024, Massie submitted a Notice of Claim to the City of Surprise, in accord with Ariz. Rev. Stat. § 12-821.01.

18

134.    The City of Surprise has not responded to Massie's Notice of Claim.

**INJURIES TO PLAINTIFF**

135.    Defendants injured Massie by silencing, detaining, and arresting her because she criticized government officials—an exercise of rights "high in the hierarchy of First Amendment values." *Lozman*, 585 U.S. at 101.

136.    The City of Surprise violated Massie's First Amendment rights by establishing, maintaining, and enforcing a policy allowing speakers to praise city officials, while forbidding them from complaining about the same officials.

137.    Mayor Hall injured Massie by ordering her to "stop talking" negatively of government officials, cutting off her "Call to the Public" remarks at the August 20 City Council meeting, and directing police to detain and eject her. Mayor Hall's viewpoint-discriminatory and content-discriminatory directive violated Massie's well-established First Amendment right to address a public body in a nondisruptive manner during a public comment period.

138.    Officer Shernicoff injured Massie by carrying out Mayor Hall's unconstitutional directive. Shernicoff's actions compounded the violation of Massie's First Amendment rights by violating her Fourth Amendment right to be free from unreasonable seizure.

139.    Officer Shernicoff physically injured Massie while detaining her while carrying out Mayor Hall's unconstitutional directive. Shernicoff caused further injury to Massie's constitutional rights by physically removing her from a public forum, pushing her

against a wall and then forcing her to the ground, handcuffing her, arresting her, and removing her to a detention facility, where she was searched, fingerprinted, and held.

140.    Mayor Hall and Officer Shernicoff injured Massie by enforcing, through physical force, the Council Criticism Policy in front of Massie's minor daughter, in front of the audience assembled for the August 20 meeting, and in front of all those watching online and who later watched online.

141.    Mayor Hall's order and Officer Shernicoff's use of physical force in front of Massie's minor daughter caused Massie to suffer severe emotional distress. As a result of Hall's and Shernicoff's actions, Massie has suffered from insomnia, loss of appetite, and other physical and mental manifestations of that severe emotional distress.

142.    Mayor Hall promised to repeat his unconstitutional conduct, warning Massie, onlookers, and viewers of the video that he would have police remove those who violate the Council Criticism Policy during future City Council meetings.

143.    Mayor Hall's willingness to violate Massie's First Amendment rights at the hands of law enforcement had and has a chilling effect on Massie and all those who wish to address the Surprise City Council.

## CLAIMS

### FIRST CLAIM
**Violation of First Amendment—Freedom of Speech, Freedom of Petition**
**42 U.S.C. § 1983**
**(Against Defendant Hall for Damages)**

144.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

145.    The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press, or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

146.    Criticizing government officials "is at the very center of the constitutionally protected area of free discussion." *Rosenblatt*, 383 U.S. at 85.

147.    Surprise established a limited public forum when it created a "Call to the Public" segment of City Council meetings. *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990).

148.    In a public body's public comment period, content-based regulations are permissible only where they are "viewpoint neutral and enforced that way." *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010).

149.    "Viewpoint discrimination is impermissible no matter the forum." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1162 (9th Cir. 2022) (quoting *Nurre v. Whitehead*, 580 F.3d 1087, 1095 n.6 (9th Cir. 2022)).

150.    "Viewpoint discrimination is an egregious form of content discrimination and is presumptively unconstitutional." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019) (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995)).

151.    On its face, the Council Criticism Policy's prohibition of "complaints" about city officials and employees permitted two points of view (laudatory or neutral speech about public officials) while forbidding a third (critical speech about the same officials).

152.    The Council Criticism Policy therefore codified viewpoint discrimination and was unconstitutional under the First Amendment both on its face and as applied to public comments critical of government officials.

153.    The Council Criticism Policy was also unlawful content discrimination because it prohibits a category of speech (complaints about public officials) while allowing others.

154.    Under the First Amendment, content discrimination is permissible in the limited public forum of a public comment portion of a City Council meeting only if the restriction is viewpoint-neutral and reasonable in light of the purpose served by the forum. *Norse*, 629 F.3d at 975, 976 n.10.

155.    Prohibiting members of the public from criticizing government officials during a City Council meeting is not a reasonable restriction because the purpose of a public comment period is, among other things, to permit the public an opportunity to raise matters of public concern with their elected officials and, in so doing, to address, praise, or criticize their elected officials. The public comment period allows the public to exercise their right to free speech and their right to petition their government officials for redress of grievances.

156.    A government policy that discriminates based on viewpoint and content must satisfy strict scrutiny by being narrowly tailored to serve compelling state interests. *Waln*, 54 F.4th at 1163.

157.    Surprise had no compelling interest to justify its Council Criticism Policy suppressing the public's ability to exercise their rights to free speech and to petition by peacefully voicing criticism about government officials.

158.    To the extent the Council Criticism Policy was intended to prevent "disruption" at City Council meetings, it was not narrowly tailored because a violation of the policy required no evidence of actual, imminent, or threatened disorder.

159.    The reaction of the Mayor or City Council members to public criticism could not serve as a "disruption" justifying restricting the speech of members of the public.

160.    To the extent that the Council Criticism Policy was intended to prevent the City Council from acting on a formal complaint without advance notice to the public, the policy was not narrowly tailored to achieve that goal.

161.    Any interest in preventing the City Council from acting on a formal complaint without advance notice to the public could have been served without prohibiting the public from making critical comments during public meetings.

162.    For example, the City Council could prohibit its own members from acting on a formal complaint until the next regular meeting. Accordingly, the Council Criticism Policy, and its enforcement against Massie's August 20, 2024, public comment remarks, violated the First Amendment.

163.    Massie's remarks about the City Attorney's pay addressed a topic of public interest and concern.

164.    Mayor Hall engaged in impermissible viewpoint discrimination by using his status as Chair of the City Council to suppress Massie's criticism of a proposed pay

increase for Surprise's City Attorney via the viewpoint-discriminatory Council Criticism Policy. Mayor Hall's actions deprived Massie of her First Amendment right to peacefully criticize public officials and to speak about matters of public concern.

165.    Mayor Hall engaged in impermissible content discrimination by using his status as Chair of the City Council to suppress Massie's criticism of a proposed pay increase for Surprise's City Attorney via the content-discriminatory Council Criticism Policy. Mayor Hall's actions deprived Massie of her First Amendment right to peacefully criticize public officials and to speak about matters of public concern.

166.    It is clearly established that criticizing government officials "is at the very center of the constitutionally protected area of free discussion." *Rosenblatt*, 383 U.S. at 85.

167.    It is clearly established that government actors may not discriminate against speech based on the viewpoint expressed. *Rosenberger*, 515 U.S. at 828.

168.    It is further clearly established that prohibitions on criticizing government employees during public comment periods at City Council meetings are unconstitutional viewpoint discrimination. *Norse*, 629 F.3d at 975.

169.    It is clearly established that unreasonable restrictions on public comments at City Council meetings violate the First Amendment. *Norse*, 629 F.3d at 975.

170.    Using governmental authority to suppress public criticism of government officials, but allowing praise of government officials, is an obvious constitutional violation.

171.    At all times relevant, Mayor Hall was or should have been aware his actions were unconstitutional.

24

172.   As a direct and proximate cause of Mayor Hall's actions, Massie was deprived of her rights guaranteed by the First Amendment and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation and public embarrassment, and legal and other costs. Massie is entitled to actual and compensatory damages against Mayor Hall in an amount to be proven at trial.

173.   Mayor Hall's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's First Amendment rights because the Mayor acted with the intent to suppress Massie's criticism, not for any legitimate policy purpose. Accordingly, punitive damages also are appropriate and necessary to punish Mayor Hall for abridging Massie's constitutional rights and to deter other government officials from following Mayor Hall's censorial example.

174.   Mayor Hall's recklessness and callous disregard for Massie's First Amendment rights is exhibited by, among other things:

      a)   Mayor Hall's violation of clearly established First Amendment law;

      b)   Mayor Hall's dismissal of Massie's First Amendment rights as "your opinion;"

      c)   Mayor Hall's failure to seek guidance from the City Attorney when Massie raised her First Amendment rights;

      d)   Mayor Hall's enforcement of a policy substantively identical to that declared unconstitutional in 1996; and

      e)   Mayor Hall's expulsion of Massie, at the hands of law enforcement, for nondisruptive speech, in front of her then-10-year-old daughter.

**SECOND CLAIM**
**First Amendment Retaliation—**
**Freedom of Speech, Freedom of Petition**
**42 U.S.C. § 1983**
**(Against Defendant Hall for Damages)**

175.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

176.    It is clearly established that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

177.    Massie engaged in protected First Amendment expression for the reasons stated in Claim I.

178.    Mayor Hall violated Massie's clearly established First Amendment rights by censoring her remarks and directing police to detain her at the August 20, 2024, City Council meeting based on Massie's prior critical comments about Mayor Hall and Mayor Hall's allies.

179.    In the alternative or in addition, Mayor Hall violated Massie's clearly established First Amendment rights by censoring her remarks and directing police to detain her at the August 20, 2024, City Council meeting based on Massie's critical comments regarding Surprise's City Attorney.

180.    But for Massie's protected expression criticizing Mayor Hall, Mayor Hall's allies, and Surprise's City Attorney, Mayor Hall would not have censored her August 20, 2024, remarks or directed police to detain her.

26

181.    Having remarks abruptly censored and being detained by police would deter a person of ordinary firmness from continuing to engage in protected First Amendment activity.

182.    Mayor Hall's actions not only prematurely curtailed Massie's exercise of her First Amendment rights, but also chilled her from engaging in protected First Amendment activity since she subsequently refrained from criticizing Surprise government officials at City Council meetings due to Mayor Hall's actions on August 20, 2024.

183.    As a direct and proximate cause of Mayor Hall's actions, Massie was deprived of her rights guaranteed by the First Amendment and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, public embarrassment, and legal and other costs. Massie is entitled to actual and compensatory damages against Mayor Hall in an amount to be proven at trial.

184.    Mayor Hall's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's rights because he acted with the intent to suppress her nondisruptive political speech criticizing him, his allies, and the Surprise City Attorney. Accordingly, punitive damages are appropriate and necessary to punish Mayor Hall for abridging Massie's constitutional rights and to deter similar violations in the future.

**THIRD CLAIM**
**First Amendment—**
**Freedom of Speech, Freedom of Petition**
**42 U.S.C. § 1983**
**(Against Defendant Shernicoff for Damages)**

185.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

186.    On August 20, 2024, Officer Shernicoff knew that the "Call to the Public" segment of Surprise City Council meetings was a forum intended for residents to express views to elected officials.

187.    Massie had a clearly established right to be free from detention and arrest for nondisruptive political remarks made within her allotted time during the "Call to the Public" segment of City Council meetings. *See Lozman*, 585 U.S. at 101.

188.    On August 20, 2024, Officer Shernicoff knew or reasonably should have known that Massie's comments opposing a pay raise for Surprise's City Attorney were constitutionally protected speech.

189.    By detaining and then arresting Massie for exercising her First Amendment rights, Officer Shernicoff deprived Massie of her First Amendment rights.

190.    As a direct and proximate cause of Officer Shernicoff's actions, Massie was deprived of her rights guaranteed by the First Amendment and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, public embarrassment, and legal and other costs. Massie is entitled to actual and compensatory damages against Officer Shernicoff in an amount to be proven at trial.

191.    Officer Shernicoff's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's First Amendment rights because he acted with the intent to suppress her nondisruptive political speech. Accordingly, punitive damages are appropriate and necessary to punish Officer Shernicoff for abridging Massie's constitutional rights and to deter similar violations in the future.

28

# FOURTH CLAIM
## Violation of Fourth Amendment—
## Unlawful Seizure and False Arrest
## 42 U.S.C. § 1983
## (Against Defendants Hall and Shernicoff for Damages)

192.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

193.    The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV.

194.    "Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

195.    Probable cause for a warrantless arrest exists only when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *Id.* (cleaned up).

196.    Probable cause may not be based on speech protected by the First Amendment. *See Wayte v. United States*, 470 U.S. 598, 608 (1985).

197.    Mayor Hall and Officer Shernicoff, acting at all times under color of state law, knowingly arrested and detained Massie, or knowingly acted to cause the same, against her will and without probable cause, in deprivation of Massie's rights under the Fourth and Fourteenth Amendments.

29

198.    Lacking a valid basis to arrest Massie, Mayor Hall and Officer Shernicoff knowingly arrested and detained her and/or caused her arrest and detention without probable cause and against her will, based on her protected First Amendment political speech.

199.    Mayor Hall and Officer Shernicoff willfully arrested and detained Massie, or willfully caused and directed her arrest and detention, with malice and/or a reckless and callous disregard for, and deliberate indifference to, her constitutional rights.

200.    Mayor Hall knew or should have known that his conduct would cause Officer Shernicoff to inflict constitutional injury on Massie. *See Johnson v. Duffy*, 588 F.2d 740, 743–45 (9th Cir. 1978).

201.    It is clearly established that an official or another acting under the color of state law cannot deprive a person of due process and seize and detain her person without probable cause. *Michigan v. Summers*, 452 U.S. 692, 700 (1981).

202.    It is also clearly established that an official or another acting under the color of state law cannot deprive a person of due process and seize her person in response to that person engaging in constitutionally protected activity, including nondisruptive political speech during the public comment period of a City Council meeting. *Lozman*, 585 U.S. at 101.

203.    It would have been clear to any reasonable official and law enforcement officer that no probable cause existed to arrest Massie.

204.    As a direct and proximate cause of Mayor Hall's and Officer Shernicoff's actions, Massie was deprived of her rights guaranteed by the Fourth Amendment and

suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, public embarrassment, and legal and other costs. Massie is entitled to actual and compensatory damages against Mayor Hall and Officer Shernicoff in an amount to be proven at trial.

205.    Mayor Hall's and Officer Shernicoff's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's rights because they acted with the intent to suppress her nondisruptive political speech. Accordingly, punitive damages are appropriate and necessary to punish Mayor Hall and Officer Shernicoff for abridging Massie's constitutional rights and to deter similar violations in the future.

**FIFTH CLAIM**
**Violation of First Amendment—**
**Retaliatory Arrest**
**42 U.S.C. § 1983**
**(Against Defendant Hall for Damages)**

206.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

207.    Massie engaged in constitutionally protected speech when she criticized Mayor Hall, Mayor Hall's allies, and a proposed pay increase for Surprise's City Attorney.

208.    Despite knowing there was no probable cause to detain or arrest Massie for her constitutionally protected speech, Mayor Hall intended and caused Officer Shernicoff to detain and arrest Massie in retaliation for exercising her First Amendment rights.

209.    But for Massie's protected speech regarding Mayor Hall, Mayor Hall's allies, and Surprise's City Attorney, Mayor Hall would not have caused Officer Shernicoff to detain and arrest her.

31

210.    Other speakers at Surprise City Council meetings have praised and otherwise expressed views about government officials. Those speakers have not been detained or arrested.

211.    As a direct and proximate cause of Mayor Hall's actions, Massie was deprived of her rights guaranteed by the First Amendment and suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, public embarrassment, and legal and other costs. Massie is entitled to actual and compensatory damages against Mayor Hall in an amount to be proven at trial.

212.    Mayor Hall's conduct toward Massie recklessly and callously disregarded and was indifferent to Massie's rights because he acted with the intent to suppress her nondisruptive political speech. Accordingly, punitive damages are appropriate and necessary to punish Mayor Hall for abridging Massie's constitutional rights and to deter similar violations in the future.

**SIXTH CLAIM**
**Violation of First, Fourth, and Fourteenth Amendments—**
**Municipal Liability under *Monell***
**42 U.S.C § 1983**
**(Against Defendant City of Surprise)**

213.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

214.    At all times relevant to the allegations made herein, the City of Surprise developed, ratified, enforced, and allowed its officials to enforce the Council Criticism Policy.

32

215.    The Council Criticism Policy, as reflected and codified in the Rules for the Public on August 20, 2024, constituted an official city policy restricting speakers' First Amendment rights.

216.    The Council Criticism Policy was the moving force behind the deprivation of Massie's constitutional rights.

217.    Specifically, the Council Criticism Policy was the basis to: (1) censor Massie's remarks at the August 20, 2024, City Council meeting, (2) detain Massie at the August 20, 2024, City Council meeting, and (3) arrest Massie at the August 20, 2024 City Council meeting.

218.    Because the Council Criticism Policy was an official policy of the City of Surprise, the City of Surprise is responsible for Mayor Hall's and Officer Shernicoff's constitutional violations in enforcing that policy under 42 U.S.C. § 1983.

219.    Under the City of Surprise Municipal Code, Mayor Hall was the presiding officer of the City Council at the August 20, 2024, meeting.

220.    As presiding officer, Mayor Hall is the final policymaker and has final policymaking authority over the conduct of a City Council meeting because the City Council's rules provide that a member of the public may not speak "until after being recognized by" the presiding officer. (Ex. B; Ex. C at 20.)

221.    As presiding officer, Mayor Hall had final policymaking authority for the City of Surprise to order Massie to stop speaking and to order police to remove Massie from the meeting.

222.   Mayor Hall's actions as presiding officer at the August 20, 2024, City Council meeting violated Massie's constitutional rights for the reasons stated in Claims I through V.

223.   Because Mayor Hall's actions at the August 20, 2024, City Council meeting constituted the acts of a final policymaker of the City of Surprise, or are fairly attributable to the City as official city policy, the City of Surprise is responsible for the Mayor's constitutional violations under 42 U.S.C. § 1983.

224.   Because Officer Shernicoff acted under the orders of final policymaker Mayor Hall and pursuant to the Council Criticism Policy, the City of Surprise is responsible for Shernicoff's constitutional violations under 42 U.S.C. § 1983.

## SEVENTH CLAIM
### Assault
### (Against Defendant Shernicoff)

225.   Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

226.   Officer Shernicoff acted with intent to cause harmful and offensive contact with Massie's person when he detained and arrested Massie on August 20, 2024.

227.   Officer Shernicoff caused Massie to be subjected to harmful and offensive contact when he directed another officer to search Massie inside the detention facility.

228.   Massie was in imminent apprehension of Officer Shernicoff's harmful and offensive contact and the harmful and offensive contact he directed.

229.   As a proximate result of Officer Shernicoff's harmful and offensive contact, Massie suffered bruising to her wrists and arms and serious emotional distress.

230.    As a proximate result of the other officer's harmful and offensive contact, Massie suffered serious emotional distress.

231.    These harmful and offensive contacts also violated Massie's sense of personal dignity because she knew she had not broken any law but was still subjected to this sort of bodily contact.

**EIGHTH CLAIM**
**Battery**
**(Against Defendant Shernicoff)**

232.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

233.    Officer Shernicoff acted with intent to cause harmful and offensive contact with Massie's person when he detained and arrested Massie on August 20, 2024.

234.    Officer Shernicoff also caused Massie to be subjected to harmful and offensive contact when he directed another officer to search Massie inside the detention facility.

235.    As a proximate result of Officer Shernicoff's harmful and offensive contacts, Massie suffered bruising to her wrists and arms and serious emotional distress.

236.    As a proximate result of the other officer's harmful and offensive contact, Massie suffered serious emotional distress.

237.    These harmful and offensive contacts also violated Massie's sense of personal dignity because she knew she had not broken any law but was still subjected to this sort of bodily contact.

**NINTH CLAIM**
**Intentional or Reckless Infliction of Emotional Distress**
**(Against Defendants Shernicoff and Hall)**

238.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

239.    Defendants Shernicoff and Hall intended to cause Massie emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct.

240.    Defendants Shernicoff and Hall caused Massie serious emotional distress.

241.    Defendants Shernicoff's and Hall's conduct in detaining and arresting Massie, using force to remove Massie from a public meeting, using force against Massie in front of her minor daughter, and preventing Massie from calling or otherwise locating her daughter while in police custody was so extreme and outrageous as to go beyond all possible bounds of decency, and was such that it can be considered atrocious and utterly intolerable in a civilized community.

242.    Shernicoff's and Hall's conduct and the resulting emotional distress caused Massie physical harm and caused her to require ongoing psychiatric care.

243.    Shernicoff's and Hall's actions were the proximate cause of Massie's physical and psychic injuries.

244.    Massie has suffered serious mental anguish of a nature that no reasonable person could be expected to endure.

245.    Massie's mental anguish has been both emotionally severe and debilitating and has manifested in physical symptoms and injuries.

**TENTH CLAIM**
**Violation of Fourth and Fourteenth Amendments—Excessive Force**
**42 U.S.C § 1983**
**(Against Defendant Shernicoff)**

246.   Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

247.   A police officer may use physical force only where "the officer's actions were objectively reasonable in light of the facts and circumstances confronting them." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (cleaned up).

248.   The circumstances confronting Shernicoff before Massie's arrest made any use of force unreasonable.

249.   Massie was exercising her First Amendment rights and speaking during the "Call to the Public" portion of the City Council meeting, so any use of force preventing her speech was unreasonable.

250.   Even if Shernicoff's initial use of force were objectively reasonable, his subsequent use of force in pushing Massie to the ground was not objectively reasonable.

251.   As a direct and proximate result of the excessive and unreasonable force Shernicoff used, Massie suffered damage to her reputation, physical health, and mental health, and suffered mental anguish, emotional distress, humiliation, public embarrassment, and legal and other costs.

**ELEVENTH CLAIM**
**Violation of Arizona Open Meeting Law**
**Ariz. Rev. Stat. § 38-431 *et seq.***
**(Against Defendant City of Surprise)**

252.    Massie re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

253.    Arizona's Open Meeting Law provides that "all persons so desiring shall be allowed to attend and listen to the deliberations and proceedings" of public bodies like the City Council of the City of Surprise. Ariz. Rev. Stat. § 38-431.01(A).

254.    The Open Meeting Law provides that a "public body may make an open call to the public" that is "subject to reasonable time, place and manner restrictions, to allow individuals to address the public body on any issue within the jurisdiction of the public body." Ariz. Rev. Stat. § 38-431.01(I).

255.    The Open Meeting Law contemplates that individuals will criticize members of the public body during the open call to the public by providing that "individual members of the public body may respond to criticism made by those who have addressed the public body." Ariz. Rev. Stat. § 38-431.01(I).

256.    Massie's comments on August 20, 2024, addressed issues within the jurisdiction of the City Council.

257.    The Council Criticism Policy was not a reasonable time, place, or manner restriction because it discriminated against speech based on its content and viewpoint by prohibiting "complaints" against city officials and employees and because it was not

38

narrowly tailored to serve a significant government interest. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

258.    Instead, the Council Criticism Policy limited speech on issues within the jurisdiction of the City Council.

259.    By maintaining the Council Criticism Policy, Defendant City of Surprise violated Arizona Revised Statute § 38-431.01(I)'s requirements that policies on public comments (i) be reasonable time, place, or manner restrictions and (ii) permit public comments on issues within the jurisdiction of the City Council.

260.    By enforcing the Council Criticism Policy against Massie, Defendants Hall and the City of Surprise violated Arizona Revised Statute § 38-431.01(I)'s requirements that policies on public comments (i) be reasonable time, place, or manner restrictions and (ii) permit public comments on issues within the jurisdiction of the City Council.

261.    By removing Massie from the ongoing City Council meeting, Defendants Hall and Shernicoff violated Arizona Revised Statute § 38-431.01(A)'s requirement that Massie "be allowed to attend and listen to the deliberations and proceedings" of the City Council.

262.    Massie is a person "affected by" Defendants' violations of the Open Meeting Law. Ariz. Rev. Stat. § 38.431-07(A).

263.    Massie brings this action to require "compliance with, or the prevention of violations of," the Open Meeting Law and "to determine the applicability of" the Open Meeting Law "to matters or legal actions of" Defendants. Ariz. Rev. Stat. § 38-431.07(A).

264.    Massie is entitled to declaratory relief concerning the applicability of the Open Meeting Law to the actions of Defendants. Ariz. Rev. Stat. § 38-431.07(A).

265.    Massie is entitled to equitable relief as the Court deems appropriate. Ariz. Rev. Stat. § 38-431.07(A).

266.    Massie is entitled to her reasonable attorneys' fees from Defendant City of Surprise. Ariz. Rev. Stat. § 38-431.07(A).

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests this Court enter judgment against Defendants and issue the following relief:

A.    Award Massie compensatory, nominal, and punitive damages;

B.    Award Massie declaratory relief under the Open Meeting Law;

C.    Award Massie equitable relief under the Open Meeting Law;

D.    Award Massie her attorneys' fees under 42 U.S.C. § 1988 and Ariz. Rev. Stat. § 38-431.07(A);

E.    Award Massie her costs; and

F.    Award such other relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.


Dated: January 17, 2025                      Respectfully submitted,

*/s/ Conor T. Fitzpatrick*
Conor T. Fitzpatrick*
(Mich. P78981 / D.C. 90015616)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@thefire.org

Adam B. Steinbaugh*
(Penn. 326476 / Cal. 304829)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
adam@thefire.org

Daniel J. Quigley
(State Bar No. 011052)
DANIEL J. QUIGLEY, P.L.C.
5425 E. Broadway Blvd., Ste. 352
Tucson, Arizona 85711
(520) 867-4430
quigley@djqplc.com


*Counsel for Plaintiff*

*Admitted pro hac vice.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and exact copy of the foregoing document has been served upon the counsel for the parties in interest by operation of the Court's electronic case filing system.

/s/ Conor T. Fitzpatrick
Conor T. Fitzpatrick