Conor T. Fitzpatrick* (Mich. P78981 / D.C. 90015616)
FOUNDATION FOR INDIVIDUAL RIGHTS
AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@thefire.org

*Admitted *Pro Hac Vice*
*Counsel for Plaintiff*
Additional counsel and emails listed in signature block

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Rebekah Massie<br><br>                    *Plaintiff*,<br>   v.<br><br>City of Surprise, a municipal corporation and a governmental entity; Skip Hall, in his individual capacity; and Steven Shernicoff, in his individual capacity,<br><br>                    *Defendants*. | No:    2:24-cv-02276-ROS--DMF<br><br>**PLAINTIFF MASSIE'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS (DOC. 34)** |

## INTRODUCTION

When then-Mayor of Surprise, Arizona, Skip Hall ordered police to arrest Plaintiff Rebekah Massie at a City Council meeting for criticizing the city attorney's pay raise, he pledged to expel anyone who dared to "attack" City officials, invoking a policy prohibiting the public from airing "complaints" about them. Doc. 32 ("SAC"), ¶ 8. To halt Hall's ongoing and irreparable threat to Arizonans' First Amendment rights, Plaintiffs Massie and Surprise resident Quintus Schulzke promptly brought this suit and sought a preliminary injunction, leading the City to hastily but quietly—in contrast to their public challenges

—1—

that Massie should "bring it on" by suing—repeal the policy. Doc. 16; SAC ¶¶ 125–29, 132.

After an Arizona state court judge dismissed the criminal charges against Massie, calling Defendants' actions an "objectively outrageous" violation of the First Amendment (SAC ¶¶ 118–23), Massie added state law tort counts to the complaint, adhering to Arizona's notice of claim statute. Ariz. Rev. Stat. § 12-821.01. Defendants do not dispute that Massie served notices of these claims on each Defendant within 180 days of her arrest. Nor do they dispute that the notices contained the requisite information about her claims and a settlement offer. SAC ¶¶ 133–139; Ariz. Rev. Stat. § 12-821.01(A). Under the plain language of Arizona law, we should be done.

But Defendants now insist Arizona law required Massie to allow Defendants to ignore her settlement offer for the full 60-day response period and only at that point could she even *file* a pleading reciting her state law claims. Defendants' solitary support for this proposition is an offhand remark from the Arizona Supreme Court that a settlement offer requirement helps "permit the possibility of settlement before litigation." Doc. 34 at 6 ("Mot.") (quoting *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 527 (2006)). But *Falcon* did not purport to hold that the process for noticing claims must conclude before a plaintiff may file (or amend) a complaint, and no court has held as much.

To the contrary, Arizona allows the commencement of claims even when the notice of claim procedures are still playing out. *See, e.g.*, *Mammo v. State*, 138 Ariz. 528, 531 (Ct. App. 1983) (stating where a plaintiff files a complaint prior to the notice of claim period

—2—

running, the state may seek to "stay the suit for a reasonable time until the claim can be reviewed," and the case "may proceed" after defendants deny the claim). What is more, Defendants' position is unworkable in fast-moving constitutional litigation. A civil rights plaintiff seeking a temporary restraining order or preliminary injunction must file a complaint to commence a case in which to seek that relief. Were Defendants' position the law, a plaintiff who promptly seeks federal court injunctive relief would always be reliant on a court's grace to file state law claims, because the 60-day response deadline for a notice of claim is more than five weeks *after* the 21-day deadline to amend a complaint as of right. Fed. R. Civ. P. 15(a)(1). Defendants' position defies the plain text of the statute, Arizona cases interpreting it, and common sense. The Court should deny Defendants' motion to dismiss the state law claims.

The Defendants' request to dismiss the Open Meeting Law claim based on mootness is likewise faulty. Arizona's statute expressly grants courts the authority to issue declaratory relief for violations of the law—like Surprise's viewpoint-discriminatory prohibition on public criticism at City Council meetings. Massie's request for declaratory relief, along with her request for injunctive relief and statutory fees, keep the claim live.

## FACTUAL BACKGROUND

On August 20, 2024, then-Mayor Skip Hall interrupted Rebekah Massie's peaceful criticism of a proposed salary bump for the City of Surprise's attorney. SAC ¶¶ 72–81. Hall claimed the City of Surprise forbids residents like Massie from "attacking" City officials by criticizing them during Council meetings. SAC ¶¶ 43, 83–84. Hall invoked a policy,

—3—

which the City Council had reviewed and ratified two weeks earlier, SAC ¶¶ 39–40, that purported to prohibit residents from "[o]ral communications during the City Council meeting" that serve to lodge "complaints against" City employees and officials. SAC ¶ 43.

Rebuffing Massie's plea that the First Amendment shields her comments, Hall directed police to remove her—an order Officer Shernicoff swiftly enforced, handcuffing Massie as her ten-year-old daughter watched. SAC ¶¶ 72, 96–98. Mayor Hall pledged he would have critics "escorted out" by police "in the future" and "any time you attack" any official. SAC ¶ 94. Shernicoff charged Massie with trespassing. SAC ¶ 109.

As video of the arrest went viral and national outrage ensued, Surprise stood firm. SAC ¶¶ 9. A councilmember publicly dared Massie to sue ("bring it on"). SAC ¶¶ 125–26. Surprise's police chief affirmed that everyone "all the way up to our city management" viewed the arrest as "in alignment" with "policy" and "our philosophy." SAC ¶¶ 127–29.

To protect their First Amendment rights—and those of other Surprise residents—against Hall's pledge to repeat his censorship, Massie and fellow Surprise resident Quintus Schulzke promptly filed this lawsuit on September 3, 2024, accompanied by a motion for a preliminary injunction against continued enforcement of the City's policy barring criticism. Doc. 1; SAC ¶ 130; Doc. 6.[1]

It was not until Plaintiffs filed the preliminary injunction motion that the City Council repealed the anti-criticism policy, without discussion or debate. SAC ¶ 132;

---

[1] *Younger* abstention prevented Massie from joining the motion for a preliminary injunction while criminal charges against her remained pending. Doc. 6 at 6, n. 6.

—4—

1  Doc. 16. To facilitate the notice of claim process, the parties stipulated to multiple
2  extensions suspending active litigation of the dispute. Docs. 17–18, 20–21, 25–27, 29–30.
3        On November 13, 2024, Massie timely filed a notice of claim with the City, sharing
4  a description of her claims and a settlement offer. SAC ¶ 133. Surprise ignored the offer,
5  so it expired after 60 days. SAC ¶ 137; Ariz. Rev. Stat. § 12-821.01(E). With the Court's
6  leave and Defendants' consent (Doc. 21), Massie timely filed her First Amended Complaint
7  on January 17, 2025, to add state law tort claims. Doc. 23 at ¶¶ 225–45.
8        Still well within the 180-day deadline (which would have expired February 16,
9  2025), Massie served notices of claim on former Mayor Hall on January 19, and Officer
10 Shernicoff on February 13. SAC ¶¶ 134–35; Ariz. Rev. Stat. § 12-821.01(A). On April 9,
11 2025, the parties held a settlement conference before Magistrate Judge Maria S. Aguilera.
12 Doc. 31. With the Court's leave, Massie filed her Second Amended Complaint on April 22
13 to allege timely service of the notices on Hall and Shernicoff. SAC ¶¶ 134–139. Defendants
14 filed this motion on May 27, more than 120 days after Plaintiff filed her First Amended
15 complaint containing her state law claims.
16       This action is in its earliest stages. The parties have not engaged in any dispositive
17 motion practice or discovery. The Court has neither scheduled nor held any initial
18 scheduling conference. The parties have repeatedly stipulated to extensions of all deadlines
19 to accommodate the notice of claim process, to allow Defendants to investigate the claims,
20 and to facilitate the possibility of early settlement, including all sides attending a settlement

conference held in Tucson. Docs. 17–18, 20–21, 25–27, 29–30. Defendants nonetheless move to dismiss the state law tort claims on procedural grounds.

## LEGAL STANDARD

The Court should deny Defendants' motion because Massie's complaint contains "sufficient factual matter, accepted as true," that "allows the court to draw the reasonable inference" that the movants are liable, even over Defendants' procedural objections. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting, in part, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal citations omitted)). In reviewing the motion, the Court accepts "all allegations of material fact as true and construe[s] them in the light most favorable" to Massie. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

## ARGUMENT

**I.      Massie Fully Complied With Arizona's Notice of Claims Statute.**

Massie complied with Arizona's notice of claim statute by serving notices of her state law claims on each of the Defendants within the 180-day period and amending her Complaint to reflect that timely service. Defendants' attempt to graft an additional requirement onto the statute that a claim be served prior to *appearing* in a pleading lacks support from binding (or any other) authority. The statute's plain text contains no such mandate, and Defendants' reading is not supported by its purpose or history.

**A.      The text and legislative history of the notice of claim statute demonstrate Massie's compliance.**

Massie's notices fully complied with the state notice of claim statute, Ariz. Rev. Stat. § 12-821.01(A), which has three requirements: (1) plaintiffs must serve each public

—6—

1  entity and employee a notice of claim within 180 days after the cause of action accrues,

2  (2) the notice must "contain facts sufficient" for a defendant to "understand the basis" of

3  liability, and (3) it must state a "specific amount for which the claim can be settled." *Id.* If

4  the claim is "filed" in the 180-day period, an action on it "may be maintained." *Id.*

5       Defendants do not dispute that Massie met the letter of all these requirements. She

6  served notices on each Defendant within 180 days (SAC ¶¶ 133–139) and Defendants do

7  not contest the notices provided sufficient information and a settlement offer. Ariz. Rev.

8  Stat. § 12-821.01(A)

9       Instead, Defendants attempt to superimpose onto the statute an additional

10 (unwritten) requirement: that a plaintiff complete the notice of claim process before *any*

11 "litigation" may begin. (Mot. at 6). Defendants' theory arises not from the statute's text or

12 binding authority, nor even its legislative history, or any public policy rationale. Instead,

13 Defendants latch onto observational dicta in *Falcon* that forcing a plaintiff to make an early

14 settlement offer "prior to litigation" helps "permit the possibility of settlement before

15 litigation," then try to leverage that dicta to mean the notice of claim must be served "before

16 litigation." *Falcon*, 213 Ariz. at 527.

17      But that is not what the statute says, nor what *Falcon* held. "Prior to litigation"

18 appears nowhere in the statute, which requires only service of defendants with a notice

19 within 180 days. Ariz. Rev. Stat. § 12-821.01(A). Nor did *Falcon* expand the requirements

20 of the notice of claim statute, and Defendants do not cite any Arizona decision adopting or

21

22

23

—7—

*even addressing* Defendants' interpretation of *Falcon*'s stray remark. And for good reason: Defendants' interpretation is contrary to the statute's text and legislative history.

Start with the fact that the statute provides that a claim shall not be "maintained" rather than that it shall not be "filed." Because the statute does not define "maintained," courts look to its "ordinary meaning" by "consulting common dictionary definitions." *Animal Legal Def. Fund v. USDA*, 933 F.3d 1088, 1093 (9th Cir. 2019) (quotation omitted). *Merriam-Webster* defines "maintain" to mean: to "keep in an existing state," to "preserve from failure or decline," to "sustain against opposition or danger: uphold and defend," to "continue or persevere in: carry on, keep up."[2] So an action may be *continued* or preserved from dismissal if a plaintiff provides timely notice. *See, e.g.*, *Mammo*, 138 Ariz. at 531 (holding that when a plaintiff files a complaint prior to the notice of claim period running, the state may seek to "stay" litigation on those claims and the case "may proceed" after defendants deny the claim); *Boyd v. State*, 256 Ariz. 468, 475 (Ct. App. 2023) (rejecting "the State's request that we add requirements" to the notice of claim statute where the plaintiff filed a complaint before the 60-day period had expired, as the plaintiff's filing of a complaint does not impair the state defendants' ability to accept a proposed offer).

Because the operative term has a plain meaning, the "statutory interpretation inquiry ends there." *Animal Legal Def. Fund*, 933 F.3d at 1093 (quoting *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017)). But even if the term were ambiguous,

---

[2] Maintain, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/maintain.

—8—

Defendants' interpretation is only further eroded by the legislative history, which shows the Arizona legislature chose not to adopt the express exhaustion requirement used by other states. Arizona's legislature adapted New Jersey's similar statute for its own purposes, with important adjustments. *See Johnson v. Superior Ct.*, 158 Ariz. 507, 509 (Ct. App. 1988). New Jersey's statute provided that "no action *shall be brought*" against a public agency "unless the claim upon which it is based shall have been presented" to the agency. *Id.* (quoting N.J. Stat. § 59:8–3 (1972) (emphasis added)). Arizona's legislature deliberately chose not to use that language, declining to adopt New Jersey's pre-filing requirement.

The Defendants' theory would also unnecessarily complicate civil rights litigation. Suppose a state is violating a constitutional right and a plaintiff swiftly sues and seeks a preliminary injunction. If Defendants' theory is that a plaintiff may never initiate an action without completing the 60-day notice period, a plaintiff who requires urgent relief to prevent harm, such as to their First Amendment rights—as in Massie's case—must choose between protecting their rights and pursuing state law damages claims.

If Defendants' theory[3] is instead that a plaintiff may file federal claims, but must wait at least 60 days to amend the complaint to allege state law claims, the parties would first have to conduct full Rule 12 briefing on any federal claims (*see* F.R.C.P. 12(a)-(b), requiring motion to dismiss within 21 days of complaint) and then separately conduct Rule 12 motions practice on any state law claims upon an amended complaint. Because the 60-day claims period is well beyond the Rules' 21-day allowance for amendment as of right

---

[3] Defendants' motion does not make their theory particularly clear.

—9—

(F.R.C.P. 15(a)(1)), the ability to file state tort claims in a federal constitutional action would *always* require the district court's discretionary leave to file an amended pleading. On a textual and practical level, Defendants' unsupported approach does not make sense.

Arizona courts, too, have recognized that a plaintiff's premature filing does not deprive a court of jurisdiction. Rather, they hold it simply provides a basis to stay litigation while the agency considers settlement. *Mammo*, 138 Ariz. at 531; *Boyd*, 256 Ariz. at 475.

In any event, Plaintiff's filing of an amended complaint cures any potential defect. In the federal courts, an "amended pleading supersedes the original, the latter being treated thereafter as non-existent." *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (holding a new pleading "'supersedes' the old one" and the original "no longer performs any function"). The Second Amended Complaint accurately reflects timely service of notices on all Defendants within the 180-day deadline. SAC ¶ 136. And that is the operative pleading.

### B. Massie's compliance with the notice of claim requirements satisfies the public policy rationales underlying the statute.

Defendants do not contend, notably, that Massie departed from the express requirements of the statute. They do not contend that any of the notices—to the City or individual defendants—were filed after the 180-day notice window. Or that service was ineffective. Nor do Defendants argue that Massie did not provide them a settlement offer and ample opportunity to evaluate her claims and offer. Instead, they elevate atextual form over function, complaining that Massie prematurely filed a First Amended Complaint.

—10—

Massie's textual approach to Arizona's notice of claim statute is consistent with its purpose: "(1) to afford the agency the opportunity to investigate the claim and assess its liability; [and] (2) to afford the agency the opportunity to gain a settlement and avoid costly litigation[.]" *Mammo*, 138 Ariz. at 531.[4]

The process Massie followed satisfied each of these interests in spades. Defendants have had ample opportunity to investigate the claims—and little investigation was needed, considering each Defendant was physically present at the August 20, 2024, City Council meeting, and Defendants' actions towards Massie immediately caused a national uproar with coverage spanning from the local news to *The Washington Post*. SAC ¶ 124.

Second, Defendants have had every opportunity to explore a settlement before litigation. Indeed, they had more than *twice* the amount of time afforded by the 60-day settlement window before being required to respond to any of Plaintiff's complaints. The parties repeatedly adjourned Defendants' deadline to respond to the complaint to allow the notice of claim process to play out. Docs. 17–18, 20–21, 25–27, 29–30. Indeed, Massie served her notices of claim on all parties *months* before the parties' settlement conference. SAC ¶¶ 133–35; Doc. 31. Defendants' current motion is their first substantive filing in this case. Massie's compliance with the statute's text and conduct of this case fulfilled the letter and spirit of the notice of claim statute. The Court should deny Defendants' motion to dismiss the state law damages claims against Hall and Shernicoff.

---

[4] A third interest, "to advise the legislature" about potential budgetary implications, *Mammo*, 138 Ariz. at 531, is not relevant here.

—11—

II. **Massie, Censored and Ejected Under Surprise's Viewpoint Discriminatory "No Criticism" Policy, May Sue the City for Violating Arizona's Open Meeting Law.**

Defendants violated Arizona's Open Meeting Law ("OML") in three distinct ways, each providing Massie a path to declaratory and injunctive relief along with statutory attorney fees. Defendants, conversely, ignore the fact that while a city may not be required to hold public comment periods, it must abide by the OML when it chooses to do so.

The OML provides broad protection for public participation and viewing of public meetings. It ensures that "all persons so desiring shall be allowed to attend and listen to" public meetings. Ariz. Rev. Stat. § 38-431.01(A). To that end, a public body "may make an open call to the public" to solicit public comment on "any issue within the jurisdiction of the public body," including public comments consisting of "criticism" of public officials. Ariz. Rev. Stat. § 38-431.01(I). Arizona's OML must "be liberally construed" in favor of "open and public meetings." *Carefree Imp. Ass'n v. City of Scottsdale*, 133 Ariz. 106, 107 (1982) (quoting Ariz. Rev. Stat. §§ 1-211(B) & 38-431.09(A)).

Consistent with its purpose, and in tandem with the First Amendment, the OML expressly limits the regulations a public body may impose on public comments, allowing only "reasonable time, place and manner restrictions." Ariz. Rev. Stat. § 38-431.01(I). That limited authority tracks the well-known First Amendment distinction between permissible time, place, and manner restrictions (*i.e.*, when, where, and for how long someone may speak) and viewpoint-discriminatory restrictions (*i.e.,* what opinions a speaker may voice), which are impermissible in any public forum—including the comment periods of open meetings. *Norse v. City of Santa Cruz*, 629 F.3d 966, 975–76 (9th Cir. 2010) (en banc)

(holding public at a city council meeting has a right to be free from viewpoint discrimination); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) (holding unconstitutional viewpoint discrimination occurs when the government acts based on the "opinion or perspective of the speaker"). These rules and their purpose require denial of the motion.

### A. The City of Surprise violated the Open Meeting Law three times over.

Surprise violated the OML by (1) maintaining a viewpoint-discriminatory policy that exceeded its authority to impose time, place, or manner restrictions on "call-to-the-public" segments; (2) enforcing that policy against Massie to silence her remarks; and (3) removing her from a public meeting, thereby preventing her from exercising her right to "attend and listen to" the proceedings. (SAC ¶¶ 258–69). These claims are live and, under Ninth Circuit precedent, are not mooted by the voluntary cessation of the policy.

First, the City of Surprise exceeded its authority under the OML by adopting a viewpoint-discriminatory prohibition on criticism of public officials. Surprise's anti-criticism policy was viewpoint-discriminatory because it allowed the public to praise officials while forbidding complaints and criticism. That is textbook viewpoint discrimination. *Chaker v. Crogan*, 428 F.3d 1215, 1227 (9th Cir. 2005) (statute that targeted speech "*critical* of police officers" but "not those who are supportive" was viewpoint-discriminatory and thus "turn[ed] the First Amendment on its head"). "Suspicion that viewpoint discrimination is afoot is at its zenith when the speech restricted is speech critical of the government." *Id.* (quotation omitted).

Consider also *Baca*, which addressed a school district policy indistinguishable from the policy at issue here. *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 725 (C.D. Cal. 1996). Baca's policy prohibited members of the public from making "charges or complaints" about government employees during public comment periods. *Id.* The district court had no difficulty identifying the regulation as viewpoint-discriminatory, because it allowed "expression of two points of view (laudatory and neutral) while prohibiting a different point of view (negatively critical)[.]" *Id.* at 730. Not only is the Surprise policy's text identical to that in *Baca*, Defendants used it in a viewpoint-discriminatory nature: community members praised officials without incident, but the Mayor ejected Massie for criticizing the City's attorney. SAC ¶¶ 44–45, 83–86.

Second, the City (through Mayor Hall and Officer Shernicoff) violated the OML by enforcing the policy to stop Massie from criticizing the city attorney. Defendants thus prevented her from continuing comments germane to an issue before the Council—the very public participation the OML intends to facilitate. Ariz. Rev. Stat. § 38-431.01(I).

And third, the City violated the OML by ejecting Massie. That prevented her from continuing to "attend and listen to" the meeting. Ariz. Rev. Stat. § 38–431.01(A), (I).

**B.     Massie's Open Meeting Law claim for declaratory relief, injunctive relief, and statutory attorney fees remains live.**

The threefold violations outlined above give Massie a live, actionable claim for a declaration that the City's actions on August 20, 2024, violated the OML, an injunction against future violations, and statutory attorney fees. They also negate Defendants' claim that Massie lacks standing for declaratory or injunctive relief because no "similar, future

—14—

harm" is alleged, Mot. at 9, given the OML's express provisions allowing declaratory relief for past violations, attorney fees, and injunctive relief.

To start, the OML expressly provides that "*any person affected by an alleged violation*" of the OPM may seek a "determin[ation]" about the "applicability" of the OML to the "actions of [a] public body." Ariz. Rev. Stat. § 38-431.07(A) (emphasis added). It similarly provides "any person affected" the ability to "commence a suit … for the purpose of requiring compliance with, or the prevention of violations of" the OML. *Id.* So the *first three words* of the OML textually disprove Defendants' argument that "only claims brought by the attorney general may result in equitable relief." (Mot. at 8).

Defendants' argument that the OML is limited to future harm is likewise wrong. Because it is impossible to determine the "applicability" of the OML to the "actions" of a public body until after the public body engages in the challenged "action," that necessarily means declaratory relief relates to determinations regarding the lawfulness of past conduct. Massie's claims for declaratory relief regarding the City's past OML violations, and her corresponding request for statutory fees on those declarations, thus remain live. *See* Ariz. Rev. Stat. § 38-431.07(A) ("The court may also order payment to a successful plaintiff in a suit brought under this section of the plaintiff's reasonable attorney fees").

Massie's request for declaratory and equitable relief against the anti-criticism policy also remains live. A case is not moot "where a repeal or amendment is part of a bad faith attempt by the government to avoid judicial review[.]" *Stott Outdoor Advertising v. Cnty. of Monterey*, 601 F. Supp. 2d 1143, 1151 (N.D. Cal. 2009) (quotation omitted). In those

—15—

instances, a municipal defendant is not entitled to a presumption that repealing a policy moots a claim for injunctive or declaratory relief. *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc) (holding plaintiff need not show a "virtual certainty" of reenactment, only a reasonable expectation).

Here, Defendants ratified the anti-criticism policy a mere two weeks before Massie's arrest. SAC ¶¶ 39–40. In the face of national outrage, they continued to defend their actions, with a councilmember telling Massie to "bring it on" and the City's Police Chief lauding Massie's arrest as emblematic of the City's "philosophy." SAC ¶¶ 126–29. The fact that the City rescinded the policy—without discussion—only *after* Plaintiffs filed this lawsuit and a preliminary injunction motion is "strong evidence" it "might simply reenact" the policy when litigation ends. *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123, 1128 (C.D. Cal. 2001). Such bravado and public defense of their actions is the opposite of the "repudiation" for mootness through voluntary cessation. *Fikre v. FBI*, 35 F.4th 762, 771 (9th Cir. 2022), *aff'd*, 601 U.S. 234 (2024).

Finally, a plaintiff may seek declaratory relief for past harm with ongoing collateral consequences, such as the chilling effect of the Defendants' conduct here. *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 853 (9th Cir. 2014) (affirming declaratory relief on a retaliation claim, which was not moot because the plaintiffs were "still suffering" the "chilling effect" of defendants' retaliatory conduct). The Second Amended Complaint squarely alleges Massie's speech and willingness to participate at City Council meetings remain chilled due to the City's prior censorship. *See* SAC ¶¶ 148, 187.

The cases Defendants cite to argue standing requires "future" harm (Mot. at 9) involved only past (rather than ongoing) harm and plaintiffs who lacked standing because they suffered no injury distinct from other members of the public. *Sears v. Hull*, 192 Ariz. 65, 69–70 (1998); *Fernandez v. Takata Seatbelts, Inc.*, 210 Ariz. 138, 140 (2005). Massie's arrest is a distinct injury, one an Arizona court already held to be an "objectively outrageous" violation of her right to speak in city council meetings. (SAC ¶¶ 118–23.)

A meeting at which members of the public cannot criticize city officials is not one that "occur[s] in the sunshine." (Mot. at 9.) This Court should declare as much.

## CONCLUSION

The Court should deny Defendants' motion.

Dated: June 24, 2025                                   Respectfully submitted,

                                                       */s/ Conor T. Fitzpatrick*
Adam B. Steinbaugh*                                    Conor T. Fitzpatrick*
(Penn. 326476 / Cal. 304829)                           (Mich. P78981 / D.C. 90015616)
FOUNDATION FOR INDIVIDUAL                              FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION                                 RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900                               700 Pennsylvania Ave. SE, Ste. 340
Philadelphia, PA 19106                                 Washington, D.C. 20003
(215) 717-3473                                         (215) 717-3473
adam@thefire.org                                       conor.fitzpatrick@thefire.org

Daniel J. Quigley (SBN 011052)
DANIEL J. QUIGLEY, P.L.C.                              *Counsel for Plaintiff*
5425 E. Broadway Blvd., Ste. 352
Tucson, Arizona 85711                                  *Admitted pro hac vice*.
(520) 867-4430
quigley@djqplc.com

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing document was served via ECF.

                                                            */s/ Conor T. Fitzpatrick*
                                                            Conor T. Fitzpatrick