Conor T. Fitzpatrick*
(Mich. P78981 / D.C. 90015616)
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@fire.org

*Attorney for Plaintiff*
\* *Admitted* pro hac vice
*Additional counsel on signature block*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Rebekah Massie,<br><br>　　　　　　*Plaintiff*,<br><br>　v.<br><br>City of Surprise, et al.,<br><br>　　　　　　*Defendants*. | Case No: 2:24-cv-02276-ROS-DMF |

**JOINT CASE MANAGEMENT REPORT**

Pursuant to Federal Rule of Civil Procedure 26(f) and this Court's Order of January 22, 2026 (Dkt. No. 42), the Parties in this action jointly file this Case Management Report.

1. **Rule 26(f) Meeting Attendees:** All Parties met by and through counsel and conducted the Rule 26(f) meeting via telephone on February 20, 2026. Conor Fitzpatrick and Adam Steinbaugh attended for Plaintiff. James Jellison attended for Defendants.

2. **The Parties:** Plaintiff in this case is Rebekah Massie. Defendants are City of Surprise, Arizona; former Surprise Mayor Skip Hall; and Surprise Police Officer Steven Shernicoff.

—1—

3. **Nature of the Case:**

    a. **Plaintiff's Statement of the Case:** This is a civil rights action arising out of Defendants' removal and arrest of Plaintiff Rebekah Massie during the public-comment portion of the City of Surprise City Council meeting on August 20, 2024. During Massie's remarks on a matter appearing on the Council's agenda, then-Mayor Defendant Skip Hall interrupted her and ordered police to remove her, purportedly for violating a municipal policy prohibiting "complain[ing]" about public officials during Council meetings. Acting at Hall's direction, Defendant Officer Steven Shernicoff forcibly removed Massie from the chamber. Once in the hall outside, Shernicoff forced Massie against a wall, took her to the ground, and handcuffed her, injuring Massie while her preteen child watched. Massie was subsequently charged with trespassing, but a county court dismissed the criminal charge against Massie with prejudice, finding the "objectively outrageous" arrest was premised on a government attempt "to control the content of political speech." Massie alleges that Defendants City of Surprise, Hall, and Shernicoff violated her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and that the City violated Arizona's Open Meeting Law. Massie seeks compensatory, nominal, and punitive damages, as well as attorney's fees and costs.

    b. **Defendants' Statement of the Case:** On August 20, 2024, during the public comment portion of the Surprise City Council meeting, Plaintiff Rebekah Massie utilized nearly 2 ½ minutes of her 3 minutes of allotted time to speak in opposition to a planned pay increase for Surprise's city attorney. Mayor Hall interrupted her remarks, making her aware of the Council's Criticism Policy and asking her to refrain from making comments about the city attorney's employment, as the Policy provided other reasonable avenues to speak about those types of issues. Ms. Massie persisted, and Mayor Hall asked her if she wanted to be escorted from the

meeting. Massie did not voluntarily depart the podium, and Mayor Hall instructed City law enforcement to escort Ms. Massie from the meeting.

When Massie was asked to leave and was informed she was trespassed from the meeting, she physically resisted Officer Shernicoff who was required to use a reasonable and necessary amount of force due to Massie's resistance, to take Massie into custody and book and hold her at the City of Surprise police station. She was released a few hours later. Defendants deny that Massie was forced against a wall, or forcibly taken to the ground. Defendants deny that Massie's rights under the First, Fourth, and Fourteenth Amendments were violated, or that the City violated the state Open Meeting Law.

4. **Jurisdictional Basis:** This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction) because Plaintiff is suing Defendants under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201–02, for alleged violations of her rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. The Court has supplemental jurisdiction over Plaintiff's Arizona Open Meeting Law claim pursuant to 28 U.S.C. § 1367(a) because that claim forms part of the same case or controversy as Plaintiff's federal claims.

5. **Service and Appearance:** All Defendants were served and have answered.

6. **Adding Parties and Amending Pleadings:** At this time, none of the Parties expects to add additional parties to the case or otherwise to amend pleadings.

7. **Contemplated Motions and Issues:**

   a. **Discovery-Related Motions:** The Parties may file motions to compel, motions for protective orders, or motions to resolve disputes concerning the scope, timing, or

burden of discovery should the need arise. Before filing any such motion, the Parties will attempt in good faith to independently resolve the dispute.

      b. **Dispositive Motions:** The Parties anticipate filing motions and/or cross-motions for summary judgment or partial summary judgment. Issues likely to be raised include: whether Defendants violated Massie's First Amendment rights, including whether the public-comment policy and its enforcement constituted viewpoint- or content-based discrimination; whether the enforcement of the public-comment policy constituted unlawful retaliation; whether Massie's detention and arrest violated the Fourth Amendment; whether Massie can establish the City's liability under *Monell*; whether Massie's arrest and any use of force required was due to Massie's unlawful resistance; whether absolute and/or qualified immunity applies, and whether Massie is entitled to relief under Arizona's Open Meeting Law.

      c. **Expert-Related Motions:** The Parties anticipate the possibility of motions addressing expert testimony, including motions to exclude or limit expert opinions under Federal Rules of Evidence 702, 703, 704, and 705.

      d. **Pre-Trial Motions:** The Parties anticipate the possibility of pre-trial motions, including motions *in limine*.

    8. **Suitability for a Settlement Conference:** The Parties previously participated in person in a settlement conference before Magistrate Judge Maria S. Aguilera but were unable to reach a resolution at that time. (Dkt. No. 31.) While the Parties remain open to engaging in future settlement discussions, they believe that additional discovery and clarification of the factual and legal issues may be necessary before another settlement conference would be productive.

9. **Status of Pending Related Cases:** There are no related cases pending before other courts or other judges of this Court. The Maricopa County Justice Court dismissed the criminal trespass charge against Massie with prejudice on October 23, 2024.

10. **Issues Relating to Electronically Stored Information:** The Parties anticipate requesting and producing electronically stored information ("ESI") in discovery. ESI will be produced with Bates numbers in the form in which it is ordinarily maintained or in a reasonably usable form.

For Plaintiff's production: To the extent reasonably practicable, emails will be produced as image files accompanied by corresponding data load files. If emails (or similar communications) are not produced in that manner, Plaintiff will produce those records as Bates-stamped PDFs. To the extent reasonably practicable, the Parties will ensure that all ESI produced is searchable through Optical Character Recognition ("OCR"), readable, and produced with associated metadata intact. ESI that does not readily convert to image or PDF format (*e.g.*, audiovisual data, spreadsheets, or databases), will be produced in native format. Each file produced in native format will be assigned a single Bates number representing the entire file. The native file will be named using the assigned Bates number and the appropriate file extension (e.g. ".xlsx" or ".wav"). Additionally, a single-page placeholder bearing the corresponding Bates number will be included in the IMAGES folder. The placeholder image will be branded with the Bates number and saved using the Bates number as the file name with a ".tif" or ".pdf" extension.

ESI productions will include a delimited data load file (DAT) containing the metadata fields identified in the table below, to the extent each such field is reasonably available:

| Metadata Field Name: | Description: |
|---|---|
| BEGBATES | Beginning Bates number |
| ENDBATES | Ending Bates number |
| BEGATTACH | Beginning Attachment number |
| ENDATTACH | Ending Attachment number |
| DOCTYPE | Example values: Email, Attachment, File, Hard Copy |
| CUSTODIAN | Populated with Lastname, Firstname of the identified Custodian |
| ALL CUSTODIANS | Populated with the value(s) for all custodians following deduplication |
| SUBJECT | The subject value from the email message |
| FROM | The sender of the email message |
| TO | The "TO" recipients of the email message |
| CC | The carbon copied recipients of the email message |
| BCC | The blind carbon copied recipients of the email message |
| DATESENT | The date the email message was sent formatted as mm/dd/yyyy |
| TIMESENT | The time the email message was sent formatted as hh:mm am/pm |
| FILENAME | The file name of the item including the file extension |
| FILE_EXTENSION | The file extension of the item (without the "." dot) |
| FILE SIZE | An integer - the size of the item in bytes |
| FILEPATH | The file path where the item was located within the original discovery |
| TITLE | The Title of the item from Windows properties |
| AUTHOR | The Author of the item from Windows properties |
| APPLICATION | The Program name of the item from Windows properties |
| CREATEDATE | The date the item was created formatted as mm/dd/yyyy |
| CREATETIME | The time the item was created formatted as hh:mm am/pm |
| LASTMODDATE | The date the item was last modified formatted as mm/dd/yyyy |
| LASTMODTIME | The time the item was last modified formatted as hh:mm am/pm |
| MD5HASH | Hexadecimal value used for de-duplication (calculated from the native item) |
| NATIVEPATH | The relative path to the native file within the production volume |
| TEXTPATH | The relative path to the extracted/OCR text file within the production volume |

For the City's production: Email maintained within Microsoft 365 and archived through Mimecast will be produced in a reasonably usable electronic format, such as PST, EML, or MSG, or other format supported by the system at the time of export. To the extent reasonably available, productions will include associated metadata fields maintained in the ordinary course of business, including standard email header information (e.g., To, From, CC, BCC, Subject, Date Sent, Date Received) and attachment relationships. Email attachments will be produced in their native format as maintained in the system. Family relationships between parent emails and attachments will be preserved to the extent supported by the export format.

ESI that does not readily convert to image or PDF format (e.g., audiovisual files, spreadsheets, or databases) will be produced in native format as maintained in the ordinary

course of business. The Parties acknowledge that the City's systems do not natively generate litigation-specific image productions (e.g., TIFF files with Bates stamping, placeholder images, or Concordance DAT load files) without additional processing. If a different production format is requested, the Parties agree to confer in good faith regarding feasibility, cost, and proportionality.

Relevant information existing in electronic format outside the City system or City devices, if any, will be produced as is practicable depending on the system(s) upon which any such information is found.

Generally, the Parties further agree to confer in good faith to resolve any disputes regarding the scope, format, or production of ESI, including the preparation of appropriate confidentiality agreements, if necessary. In the event privileged information is inadvertently produced, such information shall be handled in accordance with the applicable clawback provisions. The Parties agree to take reasonable and proportionate steps to preserve potentially discoverable ESI consistent with the technical capabilities of their systems.

11. **Issues Relating Privilege and Work Product:** The Parties agree that any assertion of attorney-client privilege or work-product protection shall be supported by a privilege log. Fed. R. Civ. P. 26(b)(5).

For interrogatory responses and document productions, the corresponding privilege log shall be produced within fourteen (14) days after interrogatory answers are served or documents are produced. Communications to or from a party's counsel of record in this action generated after the filing date of this action need not be included on a party's privilege log.

12. **Rule 502(d) Order:** The Parties agree that any inadvertent production of privileged or work-product-protected material shall not constitute a waiver of the applicable privilege or protection, nor shall it result in subject-matter waiver. A party who receives information that reasonably appears to be privileged shall promptly notify the producing party and, upon request: (1) return or destroy all copies of the inadvertently produced material; (2) refrain from using or relying upon the material unless and until the Court orders otherwise; and (3) take reasonable steps to retrieve the material from any third parties to whom the receiving party disclosed it, if any. Nothing in this clawback provision limits or waives the receiving party's right to challenge the asserted privilege before the Court.

13. **Discovery:**

    a. **Scope of Anticipated Discovery:**

        i. The Parties anticipate that discovery will focus on the events surrounding the Surprise City Council meeting on August 20, 2024; the policies and practices governing public comment at City Council meetings; the decision-making and actions of Defendants; and the basis for Massie's detention, removal, and arrest. Discovery will also address Massie's alleged damages and Defendants' asserted defenses.

        ii. Document discovery is expected to include, among other things: (a) City of Surprise policies and procedures relating to City Council meetings and public comment, including amendments to those policies; records reflecting the enforcement or interpretation of those policies; (b) communications by and among City officials, Councilmembers, employees, and law enforcement personnel concerning the August 20, 2024 City Council meeting, Massie, her removal and arrest, subsequent policy amendments, and related public or governmental inquiries; (c) training materials, guidance, and records relating to First Amendment principles, public

meetings, protest activity, and enforcement of meeting rules provided to City officials and police officers; (d) body-worn camera footage, surveillance video, recordings of the City Council meeting, and other audiovisual materials depicting the events at issue or relating to Massie's removal, arrest, and detention; (e) incident reports, after-action reports, detention and arrest records, and communications relating to Massie's arrest or prosecution; (f) personnel records for individuals involved in the events at issue; and (g) documents relevant to Massie's claimed damages. These materials are expected to be maintained primarily by the City of Surprise, the Surprise Police Department, and Massie. Written discovery is expected to address, among other issues, the constitutionality and enforcement of the public-comment policy, the existence of probable cause, the reasonableness of the force used, the applicability of common-law and statutory immunities, the basis for any asserted municipal liability, and related matters arising from the incident and subsequent proceedings.

     iii. The anticipated discovery is proportional to the needs of the case given the importance of the constitutional issues raised, the factual disputes concerning the arrest and use of force, the limited number of parties, and the nature of the relief sought.

   b. **Changes to Discovery Limitations:** At this time, the Parties do not propose any changes to the discovery limitations imposed by the Federal Rules of Civil Procedure. The Parties reserve the right to seek modification of discovery limits by stipulation or motion should the need arise based on information learned during discovery.

   c. **Deposition Time:** Absent agreement otherwise, the Parties propose that depositions be governed by Federal Rule of Civil Procedure 30(d)(1), with each deposition limited to one day of seven hours on the record. The Parties do not believe it is necessary at this time to impose an aggregate cap on total deposition hours.

14. **Initial Disclosures:** The Parties will exchange Federal Rule of Civil Procedure 26(a) initial disclosures on or before March 17, 2026.

15. **Proposed Deadlines:**

a. **Fact Discovery:** Plaintiff proposes that fact discovery be completed by **September 11, 2026**. Defendants propose, due largely to counsel's participation in a four-week trial commencing April 28, 2026, and the need to prepare for the trial, a fact discovery completion date of **November 6, 2026.**

b. **Expert Disclosures:** Plaintiff proposes that the Parties disclose the identities of primary expert witnesses on **June 18, 2026**, and rebuttal expert witnesses on **July 17, 2026**. Plaintiff also proposes that the Parties produce expert reports one week after the close of fact discovery, and rebuttal expert reports one week later. Defendants propose Plaintiff's expert disclosure deadline be set for **June 25, 2026**; Defendants' deadline for **August 8, 2026**; and rebuttal expert disclosure on **September 4, 2026**.

c. **Expert Depositions:** Plaintiff proposes that all expert depositions be completed two weeks after the date for producing rebuttal expert reports. Defendants propose expert depositions be concluded no later than **December 11, 2026**.

d. **Face-to-Face Settlement Talks:** The Parties have already engaged in face-to-face good-faith settlement talks, as discussed above in paragraph 8.

e. **Dispositive Motions:** Plaintiff proposes that all dispositive motions be filed within six weeks after the close of expert discovery. Defendants propose **January 29, 2027,** as the deadline for all dispositive and *Daubert* motions.

16. **Request for Jury Trial:** The parties have requested a jury trial.

—10—

17. **Settlement Prospects:** As discussed above in paragraph 8, the Parties participated in an unsuccessful settlement conference before Magistrate Judge Aguilera on April 8, 2025. At this stage, the Parties' positions remain materially different, and no additional settlement discussions are currently scheduled. The Parties anticipate that further discovery and motion practice, including potential dispositive motions, may assist in clarifying the strengths and weaknesses of the claims and defenses and may inform any future settlement discussions. The Parties do not presently request additional assistance from the Court with settlement efforts but remain open to revisiting settlement discussions at a later stage of the proceedings if circumstances warrant.

18. **Other Matters:** There are no additional matters that will aid the Court and Parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.

Dated: February 23, 2026                    Respectfully submitted,

s/ James M. Jellison**                      /s/ Adam Steinbaugh
James M. Jellison, Esq. (SBN 012763)        Adam B. Steinbaugh*
JELLISON LAW OFFICES, PLLC                  (Penn. 326475 / Cal. 304829)
18801 North Thompson Peak Parkway           FOUNDATION FOR INDIVIDUAL
Suite D-235                                   RIGHTS AND EXPRESSION
Scottsdale, Arizona 85255                   510 Walnut Street, Ste. 900
Telephone:480.621.6149                      Philadelphia, PA 19106
Email: jim@jellisonlaw.com                  (215) 717-3473
                                            adam@fire.org
*Counsel for Defendants*
                                            Conor T. Fitzpatrick*
** Electronically signed with permission    (Mich. P78981 / D.C. 90015616)
                                            FOUNDATION FOR INDIVIDUAL
                                              RIGHTS AND EXPRESSION
                                            700 Pennsylvania Ave. SE, Ste. 340
                                            Washington, D.C. 20003
                                            (215) 717-3473
                                            conor.fitzpatrick@fire.org

—11—

Daniel J. Quigley
(State Bar No. 011052)
DANIEL J. QUIGLEY, PLC
5425 E. Broadway Blvd., Ste. 352
Tucson, Arizona 85711
(520) 867-4430
quigley@djqplc.com

*Counsel for Plaintiff*

\* Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that a true and exact copy of the foregoing document has been served upon the counsel for the parties in interest by operation of the Court's electronic case filing system.

/s/ Adam Steinbaugh
Adam B. Steinbaugh